## WILLIAM MINOT, Guardian, *vs.* THOMAS C. AMORY & others, Trustees.

A testator, having provided for the payment of debts, legacies, and charges of administration, gave all the residue of his estate to trustees, who were also his executors, in trust, to receive the income thereof, and, after payment of charges and expenses, to pay out of the same an annuity of $5000 to his wife, for her own benefit, payable from the time of his decease, and not less frequently than annually, and the residue of the income, during the life of his wife, and the whole of it, after her death, to his daughter, semiannually, in every year during her life : The testator also directed, that, inasmuch as he had made abundant provision for his daughter, so that his wife might not be at any charge or expense for her maintenance or education, all such charges and expenses should be defrayed out of the income of the trust property devised for the benefit of his daughter : It was held, that the residue was to be considered as formed, subject to the payment of debts, legacies, and charges, and the income thereof to be computed and payable, at and from the decease of the testator.

THIS was an appeal from a decree of the judge of probate for this county, allowing an account of the appellees, Thomas C. Amory, Benjamin Humphreys, and Charles Amory, as the trustees under the will of John S. Ellery ; and was submitted to the court upon the following agreed statement of facts : —

John S. Ellery, the testator, died on the 16th of November, 1845, leaving a widow, and one child, a daughter, Esther Sargent Ellery, then about five years of age, who, by her guardian, William Minot, is the appellant in this case. The testator, by his will, which was proved on the 27th of December, 1845, appointed the appellees his executors, and also made them trustees of the residue of his whole estate, for the benefit of his widow and child.

The following is an abstract of the material parts of the will, which bear upon the question presented by this appeal. The testator first directs the payment of debts, legacies, and charges, from the proceeds of personal property not specifically appropriated, or from the proceeds of real estate not so appropriated, which the executors and trustees are authorized to sell. He then, after giving certain specific legacies, gives all the rest, residue, &c., of his estate, including after acquired real estate, to the trustees, Amory, Humphreys and Amory, in trust, to hold and lease real estate ; to invest personal and

32 *

the proceeds of real estate, if sold, &c. ; to collect rents, dividends and profits ; and, after deducting expenses and compensation for services, to pay therefrom an annuity of $5000 to his wife, for her own benefit, during her life, payable from the time of his decease, and not less frequently than annually, and to pay all the residue of the income, during the life of his wife, and the whole, from and after her death, to his daughter, Esther Sargent Ellery, semiannually, in every year during her natural life, for her sole use and benefit. In another part of the will, the testator, after saying that he had made a liberal provision for his wife, uses the following language : " I have made abundant provision for my dear daughter, so that my wife may not be at any charge or expense for her maintenance or education, and I hereby direct, that all such charges and expenses shall be defrayed from the income of the trust property, herein devised for the benefit of my daughter."

The appellees received letters testamentary, and gave notice of their appointment as executors, in January, 1846. On the 19th of December, 1846, they presented their first administration account, in which they charged themselves with the inventory of the personal estate, amounting to $316,231·82, and with interest and income collected on the same, amounting to $23,198·95, some portion of which had accrued and was payable before the death of the testator, and the residue within a year after his decease. The executors also prayed an allowance for the payment of debts, legacies, and charges of administration, amounting in the aggregate to $29,142·19; which sum being deducted from the former, a general balance was left of $310,688·58, which was credited by the executors to the estate. It was admitted, that the receipts and payments of the executors were truly stated in this account, and that the appellant, as guardian, certified thereon, " that he had examined the same, and vouchers for all payments thereon charged, and found the same correct and true." No other account has been settled by the appellees, as executors.

The appellees, on the 30th of January, 1847, returned an

inventory into the probate court, as trustees, in which they charged themselves with the above mentioned balance of $310,688·58, as the amount of the personal property belonging to the trust fund ; and, on the 14th of October, 1848, they presented their first account as trustees, in which they charged themselves with the above balance, as capital of the trust estate. They also charged the fund with the payment of $450, as expenses incurred by them in the prosecution of certain claims, which the testator had against the Peruvian government, for property illegally taken in his lifetime.

It was admitted, that the account rendered by the appellees, as executors, was intended by them to be a final account of their administration in that capacity, though it was not so understood by the appellant; and that since the settlement thereof, they had never acted in the capacity of executors, but had managed the residue of the estate as trustees under the will.

It was also agreed, that the sum of $1750 was paid by the executors to the widow of the testator, within the year after his death, by the order of the judge of probate, for the necessary support of herself and family, in addition to her annuity of $5000, under the will ; that no delay was imputable to the appellees in the settlement of the estate as executors ; that the expenses incurred by them in prosecuting the Peruvian claims were correct in amount, and paid *bona fide;* and that these claims were prosecuted by the testator, in his life-time, and had been since represented by the appellees as his executors.

The case was argued in writing by *J. Benjamin* and *W. Minot, Jr.,* for the appellant, and by *W. Sohier* and *J. Lowell,* for the appellees.

SHAW, C. J. This is an appeal from a decree of the judge of probate for this county, allowing the first account of Amory and others, the appellees, as trustees under the will of John S. Ellery, deceased. The appeal is taken by William Minot as guardian of Esther S. Ellery, infant daughter and only child of the testator.

This account was stated by the appellees upon the basis, that their first account as executors was to be a final account; and, with this view, they assume that the balance then in their hands, standing to the credit of the estate, was the sum or capital of the trust fund. They had previously, to wit, on the 30th of January, 1847, returned the same balance as the assets of the trust in their inventory as trustees; and, upon the same assumption, that the first executorship account was final, certain expenses incurred in the prosecution of Peruvian claims were charged in this their first account as trustees. It is manifest, from the statement of the accounts, that the effect was to apply the income received from the personal estate, and which accrued during the first year, to the principal or capital of the trust fund, either by adding it specifically to that fund, or by using it to pay debts, legacies, and charges; thereby relieving the estate indirectly, and enhancing the capital of the trust fund *pro tanto*. The question is, whether this was right.

The appellees, the executors and trustees under the will, insist, that by the terms of the will, and the rules of law, the trust fund was not to be considered as formed and placed in the hands of the trustees, for the purposes of the trust, until one year after the probate of the will; on the contrary, the appellant, by her guardian, maintains, that she is entitled to the income of the personal estate from the decease of the testator, subject only to the payment of the annuity of $5000 to the widow; and that the appellees ought, in their trust account, to charge themselves accordingly. This question must depend upon the provisions of the will, and the rules of law applicable to it.

[Here the judge recited the provisions of the will as already stated.]

1. It is obvious, upon these provisions, that the payment to the wife is to commence with the death of the testator; both because the payment is in terms an annuity, and because it is in terms declared in the will to be so payable.

2. But the annuity is payable from the income of the trust

fund. The will, therefore, contemplates the existence of the trust, as beginning at the time of the testator's decease, that is, potentially; though the debts and legacies may be paid, and the computations made, afterwards, but as of that day; thus showing what the residue, constituting the trust fund, then was, though ascertained by subsequent events, receipts and payments, in a due course of administration.

3. All the residue of the net income is made payable to the daughter; — net income of what? Plainly of the same trust fund, which must be formed at the decease of the testator, to raise the $5000. Supposing that, after paying debts, legacies, and charges, out of the principal, the income of all the rest of the estate, computed from and arising after the decease of the testator, were only sufficient to pay the $5000; must not the whole be paid to the wife, and, of course, the debts and legacies be paid out of the principal. *Ex concesso,* it must. But the whole of the residue of the same income, out of the same fund, commencing at the same time, for the purpose of yielding income to raise the annuity for the wife, is by the will given to the daughter. Why should a deduction be made from the income thus given to her, for her support and education, when it would not be made so as to diminish the annuity to the wife, and when there are abundant means without it, for the payment of debts and legacies?

4. Test it thus; supposing the wife had died in two months, or two days, after the testator; from what time would the right of the daughter to the income commence?. The will answers the question as to the $5000. The same $5000, commencing at the decease of the testator, which is given to the wife if she lives, would, by force of the will, go to the daughter, from and after the decease of the wife, whether within or after the expiration of the year. But it is not given to her specifically as an annuity of $5000, to take effect on the death of her mother; but the whole of the income is given to her, in one sentence, discharged of the annuity of $5000. Then, at the decease of her mother, she takes it under the same clause, which gives her the residue, during the life of her mother.

5. It must be borne in mind, that the question is not, whether the executors and trustees were compellable to pay over any thing, either to the widow or to the daughter, within the year. An estate may be so situated, as to render it extremely doubtful whether it will be solvent or not ; whether, after payment of debts and charges, any thing will be left for devisees, legatees, annuitants, or other volunteers ; and yet by the rise in the value of property, the recovery of doubtful claims, and the successful resistance of demands against the estate, a large estate may be left, though this may not be ascertained until some time after the decease of the testator. As the claims of creditors are paramount to those of legatees, the executors may not be required or permitted, in such a case, to part with any portion of the assets to legatees or annuitants, until all the debts are paid. But when it is ascertained, that there is estate left, to pass by the will, the relative rights of the claimants under it are to be computed and adjusted, according to the terms of the will and the rules of law, as if no such necessary delay had taken place.

In the latter part of the will, the testator says, after reciting that he had made a liberal provision for his wife : " I have made abundant provision for my dear daughter, so that my wife may not be at any charge or expense for her maintenance or education, and I hereby direct, that all such charges and expenses shall be defrayed, from the income of the trust property herein devised for the benefit of my daughter."

It seems to us, that this carries a clear implication, that the formation of the trust fund, for the purpose of yielding income, should be coeval with the time from and after which income would be required from such fund, for the maintenance and education of the daughter, without charge to her mother, to wit, from the decease of the testator ; and it manifests his intention, expressed by the will, that the income of his whole property, not necessary for the payment of debts and legacies, should go to form that fund, from and after his decease.

If, therefore, any income was received by the executors,

as executors, from the time of the death of the testator, to the end of the year, when they opened their account as trustees, they were accountable for such income to the trust fund, and of course had no authority to apply any part of it to the payment of debts, legacies, or other charges on the estate. We do not mean to intimate, that the income and dividends from personal property, during the first year, were not rightfully credited to the estate in their account as executors. We think that such credit was proper, because the whole might have been required to pay debts and charges, which must be paid, although the trust fund, and all benefits to be derived from it, had wholly failed. The whole of the personal estate is first to be administered by the executors, and it is through them only, that the trustees can take any thing; and this distinction must be marked and preserved in the accounts, in the same manner, when the executors and trustees are the same persons, as when they are different.

If this is a correct view of the intent of the testator, and of the legal force and effect of the will, the mode by which it should be stated in the account seems to be obvious. The income accruing after the decease of the testator was properly received by the executors; but it should be indicated as income in their executorship account, in which they should also claim credit for it, as charged to them in their trust account. In stating their account as trustees, they should charge themselves, as trustees, with this amount as income; and then, by the terms of the will, pay $5000 out of it to the widow, and the surplus, if any, to the daughter represented by her guardian, and should discharge themselves by claiming a credit for such payments.

It is said, in behalf of the appellees, that the accounts are to be kept and settled, in the same manner as if the executors and the trustees were different individuals; and that this may serve as a test of the rights of the different beneficiaries under the will. I think the accounts are to be kept, stated, and settled, as if the two bodies were composed of different individuals, with a slight exception, which I will explain

afterwards. But how would it then stand? I think it would be the duty and the province of the executors, as such, to receive the interest, dividends and income, accruing after the decease of the testator, upon all the personal estate, charging themselves with it, as executors, but so noting it in the entries, that it may be distinguished as income.

If I am asked, whether, within the year, the executors would be bound to pay over these items to the trustees, in order to enable them to pay the same to the wife and daughter, I say, I think they would not be bound to do so. But as these items would be received for the trustees, and, through them, for the benefit of the wife and daughter, subject only to the contingency, that the estate might prove insolvent, and these items be required to add to the assets for the payment of debts; if the executors were satisfied, beyond all doubt, that the estate would not only be solvent, but leave a very large surplus for the trust fund, they might safely and quite within the line of their duty advance moneys equal in amount to such accruing interest received, taking an obligation from the trustees to refund such sums in whole or in part, should they be required by the executors to be replaced in the fund of assets, for the payment of debts. If no such contingency should arise, these advances would be a good discharge *pro tanto* of the duties of the executors as such; and the trustees would stand chargeable in their trust account for the like sums received on that account.

Indeed, when the entire residue is given over to a legatee, in trust or otherwise, I do not think that executors are bound absolutely to pay over the whole after the expiration of one year; nor is it ordinarily expedient to do so, without taking a similar conditional obligation to reimburse; because executors are liable for debts for four years, and they cannot know, at the expiration of one year, that such debts will not appear.

The only difference between a case, where the executors and trustees are the same persons, and one in which they are different persons, is this: it is a rule of law well established, that where the same person is to pay money and receive the

same money, and nothing remains but to enter receipts and payments in their proper accounts accordingly, the law will consider that as done, which ought to be done. So, when the same person is administrator of an estate, and also guardian to one of the distributees, and a decree of distribution to his ward is made, he becomes chargeable in guardianship account, because the money is in his own hands, and the law presumes that he has made the application, which he ought to have made, whether he has made any entry on paper to that effect or not.

So, in the present case, if the appellees received income within the year, and made payments to the widow, such payments should not be regarded as made by them in their capacity of executors, but as advancements of money to themselves, as trustees, and as payments by them in that capacity to the widow, according to the will; and the charges should be so entered in their respective accounts. So, if, after they have opened the trust account, and transferred the whole residue standing on the executorship account to the trust account, money becomes necessary and is used to pay debts, or other charges, by the appellees as executors, the course would be, for them to claim credit in their trust account for so much money withdrawn therefrom and replaced in the executorship account, and then to discharge themselves in the executorship account, by charging for so much money paid for debts or expenses. This would be the mode of dealing with such charges as for the sums paid in the proper prosecution of the Peruvian claims, if the whole residue had been rightfully carried into the trust account.

The fact, therefore, that the same persons are executors and trustees, though it does not affect the ultimate rights of parties beneficially interested, yet enables the individuals clothed with this double character to act in the two capacities with more ease and safety than they otherwise could. As the funds are at all times under their own control, either in the one capacity or the other, then, under the rule mentioned, that the law considers that paid which it requires to be paid, nothing

remains for the executors and trustees to do, but to keep accurate accounts, to charge and credit the one fund or the other, according to every possible contingency, with moneys received and debts and charges paid; and when the executorship account is closed, and the statute of limitations has taken effect, then the trust account will exhibit the trust fund, as directed to be formed by the will, being the whole estate remaining after the payment of specific legacies, debts, and charges.

It may be added, in speaking of the accounts, that the accounts of the trustees will fall under the two heads of "income" and "capital." Under the former will be credited all sums received as income, either through the executors or by themselves, after receiving the capital; and of this account, deducting necessary incidental expenses, they will discharge themselves by paying the annuity to the widow, and the residue semiannually to the daughter. In the account of "capital" will be charged and credited all increase or diminution of the principal fund, together with all sales, transfers, and reinvestments thereof.

If we are right in supposing, that, by the force and effect of this will, the residue is to be considered formed, and the income of it to be computed from the decease of the testator, it becomes unnecessary to distinguish between the real and personal estate. But were it otherwise, in regard to the personal, we see not why the income of the real estate should not be received by the trustees, as such, from the decease of the testator. By the devise, the trustees became seized on the death of the testator, and entitled to the rents and profits. The executors have a power to sell; but it is only upon the execution of that power, that the estate of the devisees in trust becomes divested. Until such execution, they are seized in fee, and the right to the rents and profits follows as incident; and the trustees must pay over such rents and profits according to the trusts on which they hold the estate. There is no direction in the will to sell the real estate, and, from the proceeds, to compose the trust fund; the estate itself

is given in trust, and the specific rents, deducting taxes and other charges, constitute the income to be paid over.

If these suggestions are well founded, they answer one objection of the appellees, to wit, that the appellant should have appealed from the decree allowing the first account of the executor, to the allowance of which he as guardian assented. The executors rightly charged themselves, in the first instance, with the interest and income of personal estate, which accrued after the decease of the testator. Their error, in our opinion, was, after they found that it was not required for the payment of debts, that they did not withdraw these items from the assets held as executors, and place them as income in the fund directed to be held by them as trustees.

We have thus considered the case as settled by the will ; and we think there can be no doubt, that, as a testator has a full disposing power over his estate, subject only to the paramount rights of creditors, he may, by any words expressive of his intent, direct how his estate shall be appropriated and disposed of, if such intent can be carried into effect according to the rules of law. We think the authorities agree in this ; and the cases cited indicate what the law will intend and presume, and what rules on the whole are most reasonable and convenient in regulating those cases, where the will is silent, or open to construction. *Elwin* v. *Elwin*, 8 Ves. 556.

Many cases turn upon the use of the term "after" in a will, that is, "after" the payment of debts and legacies, as if that fixed the time for the payment of the residue. Here, it may be remarked, that phraseology is not used ; but when that phrase is used, it is obvious, that it does not necessarily or commonly fix the time of payment, but rather the order and priority of claims. *Lamb* v. *Lamb*, 11 Pick. 371, 378. That case, also, is an authority, that the will, when its terms are clearly intelligible, shall govern.

The cases, turning upon the question, from what time interest on legacies shall be computed, in a common case, or in the case of a legacy to a child, or of a legacy given by one *in loco parentis*, have no bearing on the present case ; nor the

cases, where property is directed to be sold, and the proceeds converted into a trust fund. Indeed, we do not perceive, that any of the cases cited, though they differ somewhat from each other, in other respects, are in conflict with the decision to which we propose to come in this case.

The case of *Stott* v. *Hollingsworth*, 3 Madd. 161, was mainly relied on in the argument. The authority of that decision has been called in question, and it is said by Sugden, *arguendo*, in *Hunt* v. *Morris*, Turn. & Russ. 241, to have been appealed from, and afterwards compromised. It was a decision of sir John Leach, vice-chancellor. But whatever may be its authority, it does not affect the present case. It merely affirms the principle, that where a general residue is given in trust, interest of the same to be collected and paid over to collateral relations, for life, and then over, the interest due the first year is added to the principal to form the fund.

In the case of *Taylor* v. *Hibbert*, 1 Jac. & Walk. 308, the vice-chancellor insisted upon the generality of the rule, that the residue shall be regarded as formed, at the end of the year, and that the authority of the rule ought not to be shaken by slight differences in circumstances. But the rule cannot affect a case, where, in clear and intelligible terms, the interest is given, to take effect at the decease of the testator. Besides, this case is, in effect, overruled by the subsequent decisions of lord Eldon, in *Angerstein* v. *Martin*, Turn. & Russ. 232, and *Hunt* v. *Morris*, Turn. & Russ. 241.

But there are very decisive authorities the other way, to which I will briefly allude, without reviewing them. *Fearnes* v. *Young*, 9 Ves. 549. In *Angerstein* v. *Martin*, where most of the former cases were considered, the direction was, that personal property should be laid out in land, and settled in trust, to pay the income to one for life, and, in the mean time, the interest of the personal to the person who would be entitled for life to the income of the land; it was held, that as to the interest on all the personal property, not necessary to the payment of debts, the tenant for life was entitled to it, from the decease of the testator.

The case of *Hunt* v. *Morris*, already cited, was decided by lord Eldon; it was a bequest of a general residue to be invested, and it was held, that all the interest accruing the first year, from money not wanted for the payment of the debts, went to the legatee, to be computed from the death of the testator. See also the case of *Williamson* v. *Williamson,* 6 Paige, 298.

Nor is it necessary to consider the large number of authorities, distinguishing the cases, where interest will or will not be allowed on a legacy to a child by a parent, or by one standing *in loco parentis,* by way of maintenance. The only use which can properly be made in this case of the fact, that the beneficiary claiming under this trust was the only child of a wealthy father, is, that it might add some weight to that of the other considerations, tending to show the intent of the testator, that the abundant provision, which he professes to have made for his daughter, should be commensurate in time with her want of. it for maintenance and education.

The court are therefore of opinion, that the decree of the court of probate, by which this account was allowed, must be reversed. But it appears to us, that no difficulty need arise from the fact, that the former executorship account has been allowed; the accounts can notwithstanding be set right, and the purpose hereinbefore indicated accomplished. The decree appealed from will be reversed, and when the case is again before the probate court, it will stand there as if no decree had passed; and the trustees, by leave, can then withdraw this account, and proceed to settle a second executorship account. They say they considered their first as a final account. Strictly speaking, there is no such thing as a final probate account. So long as the powers and duties of executors and administrators remain, so long there may be acts done, which require a further account.

In this second executorship account, let them charge the amount of all debts, legacies, and expenses paid; and if there be still unsettled claims, requiring probable expense, or any apprehension of further debts, we see no objection to thei

**33 \***

reserving as much as may be thought reasonably necessary **to** meet such debts and expenses, to be accounted for hereafter. Then let them claim credit as executors for all the income and. interest received by them, which accrued after the decease of the testator, as taken to themselves in their capacity of trustees, and to be charged to them in their trust account specifically as income. Let them, in like manner, claim credit in their executorship account, for the entire residue of the estate, if no reserve is made for debts and expenses, or the balance, if such reserve is made, as so much taken to themselves as a trust fund under the will, and, in their trust account, charge themselves with the same amount, as the capital of the trust fund, to be held, managed and disposed of according to the trusts and directions of the will.

*Decree accordingly.*