## J. W. & J. A. WILLIAMSON *vs.* N. S. WILLIAMSON & S. HENDRICKSON, Executors, &c.

Where the interest or income of the testator's residuary estate is bequeathed to a legatee for life, and no time is prescribed in the will for the commencement of such interest or the enjoyment of the use or income of such residue, the legatee for life is entitled to the interest or income of the clear residue, as afterwards ascertained, to be computed from the death of the testator.

A legacy to a child whose support and maintenance is otherwise provided for by the bounty of the testator, like a legacy to a more distant relative, or to a stranger, is not payable and does not draw interest until one year after the death of the testator, where no time of payment is prescribed by the will.

But a legacy to the widow, in lieu of her dower, draws interest from the death of the testator, where he has provided no other means for her support during the first year after his death. And such a legacy does not abate rateably with other general legacies in case of a deficiency of assets.

Where legacies are payable at the end of a year from the testator's death, the legatee of a life interest in the residuary estate is not entitled to the whole interest on the amount of the general legacies for the first year. But the amount of the residuary estate at the death of the testator, for the purpose of settling the rights of the tenant for life and the remainder-man in the residuary fund, must be ascertained by taking from the estate such a sum for the general legacies as would if invested at the death of the testator produce the amount of such legacies at the end of the year, clear of expense ; or by deducting five per cent from the amount of the general legacies and adding it to the capital of the residuary estate, and giving to the legatee of the life interest in such residue the income thereof from the testator's death.

Where a life estate is bequeathed in the testator's residuary personal estate, with remainder over to others, it is the duty of the executors to have the fund properly invested so as to produce an income of at least five per cent ; and if it is not so invested, they will be liable to the remainder-men for the capital of the residuary fund with the interest or income thereof from the death of the legatee for life.

It is the duty of the surrogate upon the taking of an account, or upon any other proceeding before him which may be the subject of an appeal from his decision, to reduce to writing and preserve the evidence and the admissions of the parties, so far as to enable him or his successor to make a correct return of the facts if it shall be necessary to do so upon appeal. And no extraneous evidence can be received by the appellate court upon the hearing of the appeal to contradict the return of the surrogate.

1837.

Williamson
v.
Williamson.

March 7.

THIS was an appeal from a decree of the surrogate of Kings county upon the settlement of the accounts of the respondents as the executors of Stephen B. Williamson. The testator died in November 1828, possessed of a large real and personal estate. By his will he devised to his sons Nicholas S., John, and James A., certain specific portions of his real estate, and the residue thereof he devised to James A. He also confirmed certain advancements which he had theretofore made to his daughter Susan, the wife of S. Hendrickson, and gave her in addition thereto, a legacy of $4000, payable out of the personal estate. He also gave to each of his sons John and Nicholas S. a legacy of $12,000, payable in the same manner. The testator also bequeathed to his wife the use of the residue and remainder of his personal estate, during her life or widowhood, with remainder to his three sons ; which bequest to his wife was declared to be in lieu of dower. The personal estate of the testator not specifically bequeathed amounted to something more than $30,000, after the payment of debts and the expenses of administration ; and the executors considering the pecuniary legacies as not due until the expiration of a year from the death of the testator, paid to the widow $2000 for the interest upon the fund during the first year, and paid her the income or interest upon the balance, after paying such legacies, from the expiration of the first year until the death of the widow in October, 1834. Shortly after the death of the widow two of the three sons, who were entitled to the remainder in such residuary personal estate, cited the executors to account before the surrogate. Upon the hearing before him he allowed the interest thus paid to the widow, and rejected some other claims made against the executors. And as the creditors had not been cited to produce their claims against the estate, the surrogate permitted the executors to retain $100, for the purpose of meeting such claims as might be exhibited and established within the time limited in the notice which was then being published. From this sentence or decree of the surrogate the parties who had cited the executors to account appealed to the chancellor, as to all these contested claims.

1837.

Williamson
v.
Williamson.

*J. A. Lott,* for the appellants.

*D. Selden,* for the respondents.

THE CHANCELLOR. The first objection to the account, as stated by the surrogate, is that he has not charged the respondents with $1990 for the Howard Insurance stock, instead of $1890. As there is nothing in the return of the surrogate from which it can be legally inferred that this was an erroneous allowance, the appellants strictly are not entitled to have the decree modified upon the mere production of extraneous proofs in opposition to the return. It is the duty of the surrogate upon the taking of an account, or upon any other proceeding which may be the subject of an appeal, to reduce to writing and preserve the evidence and admissions of the parties, so far as to enable him or his successor to make a correct return of the facts, in case it shall be necessary in consequence of an appeal to a higher tribunal. In this case, as it is admitted by the counsel for the respondents that a mistake has occurred in the statement of their accounts to the amount of $100, that sum may be allowed upon a settlement of such account.

I think the surrogate was right in rejecting the claim for the grain used in the family by the widow immediately after the death of the testator and before the taking of the inventory. It is not usual, even in favor of creditors, to claim an account of every bushel of grain or pound of provisions used by the widow and family of the testator from the very moment of his death. And in this case three out of four of those who were interested in the residuary fund were members of the family and got their share of the grain at the time it was used up in such family.

The children to whom pecuniary legacies were given were all otherwise provided for by the testator, so that the interest on their legacies was not wanted for their support. And as no time was prescribed in the will for the payment of such legacies, except that they should be paid as soon as convenient, the executors were right in supposing that they came within the general rule ; and that the legatees were

not entitled to interest until the expiration of one year from the testator's death. The appellants' counsel supposes that the bequest of the use of the residuary estate to the widow during her life or widowhood depends upon the same principle ; and that the whole income of the personal estate for the first year is to be added to the general residue, giving to her the interest on this accumulated fund, only from the expiration of the first year. To sustain this position the cases of *Lowndes* v. *Lowndes*, (5 *Vez.* 302,) *Sitwell* v. *Bernard*, (6 *Idem*, 520,) *Gibson* v. *Bott*, (7 *Idem*, 89,) *Stott* v. *Hollingworth*, (3 *Mad. Rep.* 161,) and *Tousey* v. *Hibbert*, (1 *Jac. & Walk.* 308,) are cited. The first of these cases was a bequest of a specific sum, and not of the residuary estate. And it was there decided, overruling a dictum of LordAlvanley in a previous case, that a legacy to a wife did not stand upon the same principle as a legacy to a child ; and did not therefore draw interest from the death of the testator unless so directed in the will. That case differs from the present in not being a bequest of a residue, and in not being given in lieu of dower, the provision made by law for the support of the wife after the death of the husband. The case of *Sitwell* v. *Bernard* only laid down the general rule that legacies draw interest from the end of one year from the testator's death. But the question now under consideration did not arise there ; as there was an express direction in that case to accumulate for one year, and the question to be decided was whether the accumulation should then cease, so as to give the owner of the life estate the interest or income after that time. We have the authority of Lord Eldon himself for saying that was all that he intended to decide in that case, and that it is not an authority for the principle contended for by the appellants. (*See Turn. & Russ. Rep.* 238, 244.) The case of *Gibson* v. *Bott* merely decides that where the testator directs one kind of property to be converted into another, and invested with the general residue in a particular manner, for the benefit of a legatee for life, with remainder over to another, the legatee for life is not entitled to the income until the conversion takes place, provided it is done within the year. But even in that case

the decree gave the owner of the life estate the interest from the time of the conversion, which was less than a year from the testator's death. And as to a part of the property, which from a defect of title could not be sold, a price was set upon it, and the tenant for life was allowed interest on that amount from the death of the testator. The case of *Stott* v. *Hollingworth* was substantially like the present, except that the persons entitled to the use of the residue for life were the sisters of the testator. And Sir John Leach there decided that the residue was composed of the capital and of the interest during the first year from the death of the testator; which capital and interest constituted a fund upon which the legatee for life was to have the interest from the end of the year. The case of *Taylor* v. *Hibbert* was decided about two years later by Sir Thomas Plumer, upon the supposed authority of *Sitwell* v. *Bernard*. It differs from the present case only in the two facts, that there the residuary fund was to be converted into real estate for the use of the first taker for life, and that it was not a bequest in lieu of dower so as to give the owner of the life estate any peculiar claim on that account. There, as the owner of the life interest died before the conversion into real estate was actually made, it was decided that his representatives were only entitled to the interest on the fund after one year from the testator's death.

There are several cases, not referred to by the counsel for either party on the argument, which it is necessary to consider, and which seem to conflict with some of the cases cited by the appellants' counsel; particularly with the decision of Sir John Leach in *Stott* v. *Hollingworth*. In *Fearers* v. *Young*, (9 *Vez.* 549,) the bequest of the life interest to the wife of the testator was in the nature of a life estate in a general residue; for it was a bequest of the interest of one half of his property to the widow during her life. A portion of the estate being peculiarly situated, in a continuing partnership, producing more than simple interest during 13 months from the death of the testator, and the profits of the partnership which accrued before as well as after the death of the testator being payable in one and two

years after the dissolution, presented a complicated case in regard to the rights of the legatee for life and the remainder-man. But although Lord Eldon hesitated some time, saying it was not well settled whether the tenant for life was entitled to interest from the death of the testator or from a year afterwards, he finally came to the conclusion that the widow was in that case entitled to interest from the death of the testator, and not to the whole profits of the partnership; and that to ascertain upon what sum the interest was to be computed, he held that a valuation must be put upon the testator's interest in the partnership profits which had then arisen or might thereafter accrue; taking into consideration also the times at which such profits would be payable under the partnership agreement. It is therefore an authority in favor of the allowing Mrs. Williamson the use or interest of the residuary fund from the death of the testator. The case of *Angerstein* v. *Martin*, (*Tur. & Russ. Rep.* 232,) came before Lord Eldon in 1823, subsequent to the decision of all the cases to which I have referred. The testator in that case devised his freehold estates to J. Angerstein for life, with remainder to his children in strict settlement; and as to his residuary personal estate he bequeathed the same to trustees, to be invested in the purchase of lands to be settled in the same manner, with authority to invest the fund in stocks, &c. until the estates could be purchased, the interest or income to go to the same person or persons to whom the rents of the estate would go if the purchase had been made. The tenant for life filed his bill within the year after the testator's death, for the purpose of having the question decided whether he was entitled to the annual interest of the clear residue of the personal estate from the testator's death, or whether the amount of such interest for the first year was to form a part of the capital of the general residue, and which was to be added to the same and invested. And upon a review of all the previous cases it was decreed that the interest from the death of the testator belonged to the tenant for life, and was not to be added to the residue for the benefit of those who were entitled to the estates in remainder in the property to

be purchased. And in the case of *Hewitt* v. *Morris*, which came before Lord Eldon a few months afterwards, (*Turn. & Russ. Rep.* 241,) and which differed from the last case only in the fact that it was a bequest of a general residue in personal estate to be invested in the funds, or other securities, unconnected with any devise of real estate, a similar decision was made as to the interest during the first year upon that part of the property which was not wanted for the payment of debts or the other legacies. It may be proper to say also that it was stated in that case by Mr. Sugden that the decision of Sir John Leach, the vice chancellor, in *Stott* v. *Holingworth,* was appealed from and finally compromised. His decision must unquestionably be considered as overruled by these subsequent cases before Lord Eldon. In the more recent case of *La Terrier* v. *Bulwer,* (2 *Sim. Rep.* 18,) where the residuary estate was directed to be invested in stocks and public funds, or upon real securities, for the use of Mrs. La Terrier for life with remainder to her children, Sir Anthony Hart decided that the owner of the life estate in the residuary fund was entitled to the interest or income from the death of the testator, or so much of the residuary fund as was at his death invested upon the proper securities ; and that upon so much as was afterwards invested within the year, she was entitled to the income thereof from the time when the investments were actually made. I find, however, that in the case of *Amphlett* v. *Parke,* (1 *Sim. Rep.* 280,) Sir John Leach still adhered to his opinion in the case of *Stott* v. *Hollingworth,* and decided this more recent case in conformity with that opinion.

The result of the English cases appears to be, and I have not been able to find any in this country establishing a different principle, that in the bequest of a life estate in a residuary fund, and where no time is prescribed in the will for the commencement of the interest or the enjoyment of the use or income of such residue, the legatee for life is entitled to the interest or income of the clear residue, as afterwards ascertained, to be computed from the time of the death of the testator. All the cases which appear to conflict with this rule, except the two decided by Sir John

Leach, which are no longer to be considered as authority, will be found to be cases in which the testator had directed one species of property to be converted into another, or the residuary fund to be invested in a particular manner, and had then given a life estate in the fund as thus converted or invested. In such cases it appears to be consistent with the will of the testator to consider the life interest as commencing when the conversion takes place, or the investment is made, either within the year or at the expiration of that time. But as a year is considered a reasonable time for the executor to comply with the testator's directions as to the conversion or investment, the legatee for life cannot be kept out of the interest or income beyond that period. In the case under consideration, there is no direction for a conversion of the fund, or for the investment thereof in any particular manner, before the right of the widow to the use thereof for life was to commence. And as it appears that a great portion of the personal estate was in bonds and mortgages and other securities which were drawing interest at the death of the testator, there is no good reason for depriving her of the use of the residuary estate for an entire year.

But even if the general rule were otherwise, I think the fact that the wife's life estate in the residue, in this case, is given in lieu of her dower, would be sufficient to take it out of the general rule, so as to give her interest from the death of the testator, as in the case of a legacy to a child having no other means of support from the bounty of the testator. Indeed a legacy to the widow in lieu of dower, is viewed in a more favorable light than a legacy to a child; the widow taking the bequest as an equivalent for her relinquishment of a right, and the child taking it as a mere bounty of the testator. For this reason the legacy of the wife given in lieu of dower does not abate rateably with others, if the fund is insufficient to satisfy all. (*Heath v. Dendy*, 1 *Russ. Rep.* 543. *Davenhill v. Fletcher, Blunt's Amb.* 245.)

But although the surrogate's decision was correct as to the widow's right to the interest or income of the residuary

estate from the death of the testator, the principle upon which such interest is computed is altogether erroneous. It was not the intention of the testator to give his wife the interest or income of his whole personal estate until the debts and legacies should be paid, or for the term of one year, and then the interest upon the residuary estate after that time. But it was his intention to give her the use or income of the same residuary fund the capital of which was to be distributed to his three sons upon her death or re-marriage. The case of *Covenhoven* v. *Shuler*, (2 *Paige's Rep.* 132,) and the authorities there referred to, settle the principle that where there is a general bequest of a residue of the testator's personal estate for life, with a remainder over after the death of the first taker, the whole residuary fund is to be invested for the benefit of the remainderman; and the tenant for life is only entitled to the interest or income of that fund. And to ascertain the amount of such residuary fund, so as to apportion the capital and the income properly between the remainderman and the tenant for life, the executor, upon settling the estate at the end of the year, must estimate the whole estate at what is then ascertained to have been its cash value, at the testator's death, after paying all debts, legacies and expenses of administration and other proper charges and commissions. But in making such deduction for legacies payable at a future day and which do not draw interest, the whole amount of the legacies is not to be deducted, but only such a sum as, if properly invested, would, at the time when the legacies become payable, have produced the requisite sum exclusive of all expenses and risk of loss. The rule in England, as between the legatee for life and the remainderman, is to invest, or consider the fund as invested, in the three per cents; being two per cent less than the legal rate of interest in that country. (*Howe* v. *Earl of Dartmouth*, 7 *Vez.* 137.) Upon the same principle, according to the legal rate of interest here, the income of a five per cent stock, which stocks can generally be purchased at about the par value, may be considered as a reasonable discount upon a legacy payable at the end of the year, for the purpose of ascertaining the value of the residuary estate

at the death of the testator. Five per cent upon the amount of the three legacies which were payable at the end of the year must therefore be deducted from the $2000 paid the widow; or, what is the same thing in this case, it must be added to the amount of the residuary estate as ascertained by the surrogate. This, with the $100 due on account of the Howard Insurance stock, will make the amount in the hands of the executors at the death of the widow, and for which they are now accountable, $4482,83. As it is admitted there are now no other claims against the estate, the $100 which the executors were permitted to retain must be paid over. The only objection which can properly be urged to that part of the decree is that it did not direct the payment of the appellants' shares of the amount retained, provided no claims were exhibited within the time limited by the notice.

I can see no good reason why the appellants should not have been allowed their share of the income which had arisen upon the residuary fund from the death of their mother; as it either was or ought to have been invested in stock or other securities producing an income of at least five per cent. The executors should therefore have been charged with five per cent thereon from that time; as it was their fault if it was not properly invested. Although it may operate as a great hardship upon the executors to require them to account for the money improperly paid over to the mother in ignorance of her rights, the court is not at liberty to deprive her children of it, if they choose to insist upon their legal claims, although a very scanty allowance was made for her support out of this large estate. But if she left any property at the time of her death, the executors will have the right to recover back from her representatives the amount she has received beyond her share, it having been paid to her by mistake.

The executors having unquestionably acted in good faith; and this case presenting an important question of law for the consideration of the court, as to which the appellants have succeeded only in part, 1 think it is a proper case in which to direct their taxable costs upon the appeal to be

1837.

Williamson
v.
Williamson.

paid out of the residuary fund in their hands. But as one of the executors is himself the owner of one third of the residuary fund, the appellants' costs must also be paid out of that fund, so that he may bear his share of the whole costs of the appeal, as one of the residuary legatees.

The sentence or decree of the surrogate must be reversed or modified in conformity to these principles ; and the decree must be without prejudice to the rights of the executors as between themselves, or as to their rights as between them and their mother's estate.