THOMAS G. POTTER, Executor, *vs.* EMMA BROWN *et als.*

A statute in force provided that "Whenever any child shall be born after the execution of his father's or mother's will, without having any provision made for him in such will, he shall have a right and interest in the estate of his father and mother in like manner as if the father or mother had died intestate, and the same shall be assigned to him accordingly." A testator, by his will, gave a bequest of $2,000 in trust, the income to be used for his daughter until twenty, or until married, then the trust fund to said daughter. In case, however, of her death under twenty or unmarried, the sum so held in trust, together with the accumulated interest thereon, was bequeathed in equal shares to her brothers and sisters then living. More than a year after the execution of the will a son was born to the testator, for whom no provision was made in the will except the above described contingency.

*Held,* that the provision was not such as was contemplated by the statute, and that the son was entitled to share in his father's estate as in case of an intestacy.

A general pecuniary bequest in lieu of dower is not subject to abatement *pro rata* with the other pecuniary bequests in case of insufficient assets.

*Semble,* that in case of an insufficient personalty the realty may be charged by implication with the payment of debts and legacies.

*Held,* that in case of such charge the executor is not obliged to enforce it in favor of the legatees.

*Query.* Whether an implied lien on realty for payment of debts and legacies empowers the executor to sell realty in Rhode Island without resorting to an equity court.

BILL IN EQUITY brought by an executor to obtain the instructions of the court.

*August* 4, 1875. DURFEE, C. J. This is a bill in equity for instructions by the executor of the will of the late William A. Brown. The will bears date of July 9, 1872. It disposes of all the testator's estate. It contains several bequests, and among them a bequest of two thousand dollars to Mary E. Brown in trust, to invest it in bank stock and to use the income thereof for the maintenance and education of his daughter, Olive Estella Brown, until she attains the age of twenty years or is married, and then to transfer the same, together with the balance of the accumulated interest thereon, to the said Olive Estella Brown for her own use. In case of her death under twenty or unmarried, the sum so held in trust, together with the accumulated interest thereon, is bequeathed in equal shares to her brothers and sisters then living. The testator, at the date of the will, had one child, to wit, the said Olive Estella Brown, who was then less than two years old. The testator died August 13, 1873. A few hours before his death a son was born to him, to wit, the infant defendant, William A. Brown. The child is

not provided for in the will, except as above stated. The principal question is, whether he is entitled under the statute to share in the estate in the same manner as if his father had died intestate. The statute, Gen. Stat. R. I. cap. 171, § 12, is as follows : —

" Whenever any child shall be born after the execution of his father's or mother's will, without having any provision made for him in such will, he shall have a right and interest in the estate of his father and mother in like manner as if the father or mother had died intestate, and the same shall be assigned to him accordingly."

The infant defendant, William A. Brown, has no present provision under his father's will, and will not have any at any future time unless his sister dies unmarried and under twenty years of age. If she dies under that age unmarried, he will take under the will if he is himself then alive. The provision is therefore entirely uncertain and contingent. He may or he may not have it. It is not a vested interest. Does such a provision sufficiently answer the requirement of the statute to defeat the right which he has under the statute, if unprovided for in the will, to share in the estate as if his father had died intestate ? Doubtless the idea of the statute is to supply an omission which may be presumed to have been unintentional. A parent naturally wishes to provide for *all* his children. When, therefore, a parent makes a will without providing in it for an after-born child, it may be presumed that the omission to provide for him was not designed. To allow the will to have its full effect under such circumstances would be to allow it to defeat instead of effectuating the wishes of the testator. The law, therefore, steps in and gives the after-born child a share in the estate as if it were intestate. In the case at bar the will bears date more than a year previous to the birth of the after-born child. Of course the testator did not then have him specially in mind with the view of providing for him. Indeed, as has been suggested, the benefit of the contingent bequest is not necessarily confined to his own children. If his widow should marry again and have other children, they, too, would be brothers and sisters of Olive Estella Brown. Shall we say, then, that the will makes provision for the after-born child ? If we say it does not, he may nevertheless soon

take the provision which his sister now enjoys. If we say it does, he may nevertheless get nothing. Did the testator himself regard the bequest as a *provision* for any child or children which might afterwards be born to him? We find but little reason for thinking he did. Upon the whole, we think it safer and more consonant with the design of the statute to decide that the bequest over is too precarious to be regarded as a provision for the after-born child so as to defeat his right under the statute to share in his father's estate as if it were intestate. And accordingly we do so decide.

The executor desires to know what effect this construction will have on the distribution of the estate. The entire estate is disposed of. It is real and personal. The personal estate is more than sufficient to pay the debts; but, giving the son his share, is less than sufficient to pay both debts and legacies. And inasmuch as the legacies cannot be paid in full, the question arises, how and in what order they shall abate. The first provision of the will, after the direction to pay debts and expenses, is a specific devise of certain real estate to the wife, the mother, and two sisters of the testator. The plaintiff, as executor, can have no concern with this provision. The will next contains certain pecuniary bequests, viz.: a bequest of one thousand dollars to the widow, to be paid to her by the executor within four months after probate; a bequest of two thousand dollars in trust for his daughter, being the bequest above mentioned, without direction as to when or by whom it is to be paid; and a bequest of five hundred dollars to each of two sisters, to be paid to them by the executor within four months after probate. The will then gives all the rest of the estate, real and personal, to the testator's mother. The provisions for the widow are in lieu of dower. The widow elects to take under the will. The personal estate is the primary fund for the payment of debts and legacies. In the case at bar the personal estate will have to be applied first to the payment of debts and expenses; then one third of what remains must be appropriated to the son, one third thereof being the share which would belong to him if there were no will; and, finally, the remaining two thirds will be applicable to the pecuniary bequests. The bequest to the widow must be paid in full, the fund being sufficient, for the reason that the provisions for the widow are in lieu

of dower, and when such is the case a general pecuniary bequest is not subject to abatement *pro rata* with the other pecuniary bequests; 2 Redfield on Wills, 551; *Burridge* v. *Bradyl*, 1 P. Wms. 126; *Blower* v. *Morret*, 2 Ves. 420; *Davenhill* v. *Fletcher*, Amb. 244; *Norcott* v. *Gordon*, 14 Sim. 258; *Heath* v. *Dendy*, 1 Russ. 543; *Hubbard* v. *Hubbard*, 6 Met. 50; *Pollard* v. *Pollard*, 1 Allen, 490; *Williamson* v. *Williamson*, 6 Paige, 298. The residue, after these payments are made, will be apportionable among the other bequests, each legatee taking in proportion to the amount of her legacy.

The bill alleges that there is real estate besides that which is devised by the first clause of the will. The testator's son will be entitled to one half of this, less one third of said half during the life of his mother. One half of it, and one third of the other half during the life of the mother, will remain to be disposed of under the will. Are the legacies a charge upon this, and, if so, has the plaintiff as executor the power, and is it his duty, to enforce the charge by selling it for the benefit of the legatees?

The real estate, if charged, is charged by implication. The residuary clause reads: " I give, devise, and bequeath all the rest, residue, and remainder of my estate, real and personal, wherever and however situated, and including therewith all such other real estate as I may hereafter acquire," &c., " to my mother, Betsey Brown," &c. No personal estate will pass under this clause, for it will be exhausted in the payment of debts and legacies, and there will be a deficiency. Is not this deficiency a charge upon the residue of the real estate? Or, in other words, is there any residue of the real and personal estate except what remains after full payment of both debts and legacies? This question would seem, upon both reason and authority, to be determinable in favor of the pecuniary legatees. *Gould* v. *Winthrop et ux. et als.* 5 R. I. 319, and cases there cited; *Lapham* v. *Clapp*, 10 R. I. 543.

But supposing the charge exists, does it follow that the executor has power to sell the real estate for its enforcement? In *Den ex dem. Snedekers* v. *Allen*, 2 N. J. Law, *45, the court expressed the opinion that a charge of debts and legacies on land by implication does not of itself give the executor authority to sell it. In *Den ex dem. Dunn* v. *Keeling*, 2 Dev. 283, the real estate

was devised after *all just debts were discharged.* The court held that the executor had no power to sell the real estate so devised. A similar decision was made in *Clark* v. *Riddle*, 11 Serg. & R. 311. The residuary devisee, it is suggested, has the right to relieve the land by paying off the charge, and, therefore, should not be subject to the risk of having the land sold without suit. We do not find any case in which it has been held that such a charge confers upon the executor a power to sell the land which is subject to the charge.

Our opinion therefore is that, supposing the charge to exist, the executor is under no obligation to take measures to enforce it, but may leave the legatees to enforce it for themselves by such remedy as they may be advised is most appropriate.

*The decree may be drawn accordingly.*

In accordance with this opinion the complainant prepared a decree and asked the court to enter it. Thereupon, after some delay, the court delivered the following supplemental opinion.

DURFEE, C. J. Since the opinion was delivered in this case, we have come across certain English cases which bear upon the point considered in the close of the opinion. *Shaw* v. *Borrer*, 1 Keen, 559; *Ball* v. *Harris*, 4 Myl. & C. 264; also in 8 Sim. 485; *Robinson* v. *Lowater*, 17 Beav. 592; also on appeal, 5 De G., M. & G. 272; *Wrigley* v. *Sykes*, 21 Beav. 337; *Corser* v. *Cartwright*, L. R. 8 Ch. App. 971. The doctrine declared or recognized in these cases is, that a testamentary charge upon the realty for the payment of debts confers upon the executor, by implication, a power to sell the realty, and, so far as we can discover, without regard to the question whether the charge is express or implied. The doctrine, however, though announced as long ago as 1836, in *Shaw* v. *Borrer*, 1 Keen, 559, cannot be considered to have become firmly established in England until quite recently; for in *Doe on dem. Jones* v. *Hughes*, 6 Exch. 223, decided in 1851, the contrary of it was held by the Court of Exchequer. The doctrine is practically objectionable not only because it exposes the testator's real estate to sale without giving his heirs or devisees an opportunity to contest the necessity of the sale, or to exonerate the estate from the necessity if it exists; but also because the power, especially when it is implied

from a charge which is itself implied, is often uncertain, inasmuch as the language or provision of the will from which the implication is made may be qualified or controlled by other language or provisions of the same instrument.   There is also a consideration growing out of our statutes in regard to sales of real estate by executors and administrators for the payment of debts.   The statutes contain ample provisions which may be availed of for the protection of all persons interested; but if we say executors have an implied power to sell for the payment of debts, independently of the statutes, whenever the realty is charged by the will, either expressly or by implication, for their payment, the value of the protection secured by the statutes is considerably impaired, for according to the English precedents such testamentary charges are very freely implied.   2 Story's Eq. Jur. § 1246.   It is true this latter consideration does not apply to a charge of legacies; but a charge of debts and a charge of legacies must, with reference to any power of sale to be inferred from either of them, stand upon the same footing.

Such a charge is not ineffectual without the power, for it can be enforced in equity like a charge or lien created in any other way, and we know of no case in which the new creation of a charge or lien upon real estate, otherwise than by will, has been held to confer a power to sell the estate charged.

In the case at bar the residuary devisee has filed no answer and has not been heard.   The question of implied power is not raised by the bill otherwise than as it is involved in the request for instruction which makes no specific reference to the question.   We should be reluctant, in view of the contradictory precedents, to decide the case against the residuary devisee, if so inclined, without giving her a hearing.   We therefore will not advise the complainant to undertake to enforce the implied charge on the residuary, estate by selling it, though it is not necessary for us to say, and in view of the English cases we refrain from saying, that the sale if made would be invalid. We will, however, advise him to join the legatees in a suit for the enforcement of the charge unless the residuary devisee will voluntarily discharge it, or will join the complainant and the legatees, together with their husbands, in selling and conveying the residuary real estate for its satisfaction.   Such a sale and

conveyance, if fairly made, would in our opinion be entirely unexceptionable, and would avoid the necesisty for further litigation.

On the other hand, if the residuary devisee chooses not to join in such a sale, either because she wishes to contest the existence of the charge or the necessity of a resort to the residue of the real estate for its satisfaction, she will have an opportunity to do so in the suit which will be brought for its enforcement.