ONONDAGA COUNTY.—HON. G. R. COOK, SURROGATE.— February, 1885.

CARR *v.* BENNETT.

*In the matter of the estate of* WILLIAM CHURCHILL, *deceased.*

Testator, by his will, after providing for the payment of his debts, funeral expenses, etc., gave to his adopted daughter, J., an adult married woman living with her husband, the farm on which testator resided, and the household furniture, absolutely, and further directed his executor to invest $4,000 in a specified manner, and to pay the interest, after deducting commissions, annually to said daughter ; the principal, at her death, to go to her children. The estate was adequate for the payment of all debts and legacies ; more than $4,000 thereof being, at the time of testator's death, and continuously thereafter remaining invested as specified, and drawing interest. The life legatee asked for interest on said sum from testator's death; the residuary legatees, on

CARR V. BENNETT.

the other hand, contending that interest did not begin to run upon the legacy until all decedent's debts were paid.—

*Held*, that the life provision for J. was a general legacy, not falling within any of the exceptions to the general rule, whereby interest on such legacies begins to run only at the expiration of a year from the testator's death.

Authorities upon the subject of payment of interest on legacies—collated; and the rules governing the same—stated.

Lynch v. Mahony, 2 *Redf.*, 434; and Pierce v. Chamberlain, 41 *How. Pr.*, 501—doubted.

APPLICATION by Jennette Carr, an adopted daughter of testator, for a decree directing the payment of interest on a legacy.

KNAPP, NOTTINGHAM & ANDREWS, *for executor.*

JASPER N. HAMMOND, *for Mrs. Carr.*

THE SURROGATE.—This is a proceeding by petition, on the part of Jennette Carr, a legatee and devisee named in the last will and testament of William Churchill, deceased, praying that Lyman C. Bennett, the executor of the will of said deceased, be cited to show cause why a decree should not be made, requiring him to pay to the petitioner the interest on $4,000 from the time of the decease of the testator. The testator died August 15th, 1882, leaving a will which was proved December 15th, 1882; and, on the same day, letters testamentary were issued to Lyman C. Bennett, the executor therein named. On the return day of the citation, the executor presented his petition praying for a final judicial settlement of his accounts, and for permission to resign his trust as executor and trustee under said will; and the matter was adjourned to the return day of the citation for final settlement.

The provisions of the will, in favor of Mrs. Carr, are as follows: "After paying the debts I may be owing at my decease, together with my funeral expenses, and after the erection of a suitable monument over the spot where my remains may be deposited, I give and bequeath to my adopted daughter, Jennette, now the wife of Sullivan Carr, the farm upon which I now reside, together with all the household furniture of every description, to have and to hold the same for her own use and benefit her heirs and assigns forever. I also order and direct that my executor hereinafter appointed shall invest the sum of $4,000 of my estate in bonds and mortgages, upon unincumbered real estate, or government bonds, and the interest thereof, after paying said executor a suitable fee for looking after said fund, shall be paid annually to said Jennette Carr, and at the death of said Jennette Carr the whole of the above bequest shall be equally divided between the children of said Jennette, to have and to hold the same for their use and benefit their heirs forever."

On settlement, it was conceded that the estate of said deceased was ample to pay all debts and legacies; that, when the testator died, more than $4,000 of his estate was invested in bonds and mortgages, and from the time of his decease to the present time, more than that amount has been continuously invested in such securities; and that Mrs. Carr was a married woman, living with her husband, was an adopted daughter of the testator, and forty-two years of age. Under the provisions of this will, she claims interest on her legacy from the death of the testator. The

residuary legatees, through the executor, contend that, under the provisions of said will, interest did not begin to run until after all debts were paid, which have but recently been settled, on account of a disputed claim. The only question submitted to the Surrogate to determine, was from what time interest should be allowed on this legacy—whether from the death of the testator, or from one year after his decease, or one year from the date of letters testamentary, or from the time the last debt was paid.

By statute, legacies are not payable until one year from the issuing of letters testamentary. The common law doctrine was that general legacies drew interest from and after one year from the death of the testator, when no time was indicated or fixed by the will, as to when interest was to commence. This rule has been strenuously adhered to, both in England in this country, where no statutory act contravened, with few exceptions. There are, however, certain exceptions to this rule, to which I shall hereafter refer.

In 2 Williams on Ex'rs, 878, the following doctrine is laid down: "When no time of payment is fixed, the executor is allowed, by law, one year from the testator's death, to ascertain and settle his affairs; at the end of which time, the court, for the sake of general convenience, presumes the personal estate to have been reduced into possession. Upon that ground, interest is payable from that time, unless some other period is fixed by the will. Nor will interest be payable from an earlier date, although there is a direction in the will to pay the legacy ' as soon as possible.' If, indeed, the legacy is decreed to be a satisfaction

of a debt, the court always allows interest from the death of the testator. After the expiration of the year from the death of the testator, the legacy will carry interest, although payment be, from the condition of the estate, impracticable, and although the assets have been unproductive. The general rule was stated by Lord REDESDALE, in Pearson v. Pearson : ' Whether the fund bears interest or not is totally immaterial in the case of pecuniary legacies. I remember a case of Greening v. Barker, where the fund did not come to be disposable for the payment of legacies till near forty years after the death of the testator, and yet the legacies were held to bear interest from the year after the testator's death ; and the court there was of opinion that it was a general, settled and fixed rule that pecuniary legacies bear interest from the expiration of twelve months, if there should at any time be a fund for the payment of them, and that, in case the fund was productive within the twelve months, all the intermediate profits belong to the residuary legatee. The executor may pay the legacy within the twelve months, but is not compelled to do so. He is not to pay interest for any time within the twelve months, although, during that time, he may have received interest. But if he has assets, he is to pay interest from the end of the twelve months, whether the assets have been productive or not.' "

At page 856, the following doctrine is enunciated : " If an annuity be given by will, it shall commence immediately from the testator's death, and consequently the first payment shall be made at the expira-

tion of a year next after that event. A distinction was taken by Lord ELDON, in Gibson v. Bott, between an annuity and a legacy for life. 'If an annuity,' said his lordship, 'is given, the first payment is paid at the end of the year from the death; but if a legacy is given for life, with remainder over, no interest is due till the end of two years. It is only interest of the legacy; and till the legacy is payable, there is no fund to produce interest.' However, a different doctrine prevails with respect to a bequest of a *residue* of personal estate for life, with remainder over. For the later decisions have established that the person taking the residue for life is entitled to the income, in some shape or other, from the death of the testator."

At page 880, in treating of general legacies, it is said: "This rule is subject to an exception in case of the testator being the parent (or *in loco parentis*) of the legatee. For there, whether the legacy be vested or contingent, if the legatee be not an adult, interest on the legacy shall be allowed, as a maintenance, from the time of the death of the testator, if there is no other provision for that purpose. The court will determine the *quantum* of allowance, either the whole of the usual interest allowed by the court, or less, according to circumstances. Where the legatee is the child of the testator, and a specific sum is given by the will for maintenance, no greater allowance can be claimed for that purpose, although it be less than the usual rate of interest upon the legacy."

This exception is not extended in favor of a wife, nor of natural children, nor of nieces and nephews,

nor of grandchildren, unless the testator was *in loco parentis*.

Roper on Legacies (vol. 2, pp. 1245, 1246), says: " Specific legacies are considered as severed from the bulk of the testator's property, by the operation of the will, from the death of the testator, and as specifically appropriated, with their increase and emolument, for the benefit of the legatee, from that period; so that interest is computed on them from the death of the testator; and it is immaterial whether the enjoyment of the principal is postponed by the testator to a future period or not. With respect to general legacies, the law, for convenience, has prescribed the general rule that, where no time of payment is named by the testator, and in the absence of any intention to be inferred from the will itself, such general legacies shall be raised and satisfied out of the testator's personal estate at the expiration of one year next after his death; from which period the legatees will be entitled to interest, though actual payment within that time may be impracticable.* But where the court has decreed a legacy to be in satisfaction of a debt, the court gives interest always from the testator's death. Annuities, as before stated, in the absence of any direction in the will to the contrary, commence from the death of the testator, and the first payment becomes due, unless otherwise directed, at the end of the year from that event. The rule is otherwise with respect to a general legacy bequeathed for life; for, that not being payable out of the assets before the end of the year from the death, no interest will be due thereon until the expiration of the second year.

But the case is otherwise where the residue is given for life."

"In the case of Hutchin v. Mannington (1 *Ves. Jr.*, 366), Lord THURLOW spoke of the known practice of the court to compute interest upon legacies from the year's end after the testator's death" (id., p. 1250). "Where a general legacy is given to one for life, with remainder over to another, the case is otherwise. For, the interest not being payable out of the assets until the end of the year from the death of the testator, no interest will be due until the end of the second year" (id., p. 1252). "Where the legatee is a child of the testator (or one to whom he has placed himself *in loco parentis*), interest shall be allowed to such legatee, from the time of the death of the testator" (id., p. 1256). "We may here observe that the exception in favor of children of the testator, and those to whom he had placed himself *in loco parentis,* does not extend to adults" [citing Raven v. Waite, 1 *Swanst.*, 553 ; Wall v. Wall, 11 *Jur.*, 403] (id., p. 1270).

In Raven v. Waite (*supra*), Sir THOMAS PLUMER remarked that all the cases decided were cases of infants; that no case had been produced in which it was ever extended to a legacy in favor of an adult.

Redfield on Wills lays down substantially the same doctrine, as to interest on legacies as is laid down by Williams on Executors and by Roper on Legacies. In vol. 3, p. 312, he says: "Pecuniary legacies carry interest after one year from the decease of the testator, unless the payment is further delayed by the terms of the will." "As far as we have been able to

examine the American cases, they profess to go upon the principles already stated in this section, both as to the time a legacy becomes payable, and the right of the legatee to demand interest,—that legacies are payable in one year from the decease of the testator, even where directed to be paid as soon as convenient" (id., p. 371). "The distinction between annuities and legacies of the interest or income of a sum of money, as to the time when it becomes payable, is thus defined by Lord ELDON, in Gibson v. Bott (7 *Ves.*, 89, 96): 'If an annuity is given, the first payment is paid at the end of the year from the death. But if a legacy is given for life, with remainder over, no interest is due till the end of two years. It is only interest of the legacy, and till the legacy is payable, there is no fund to produce interest'" (id., p. 473).

Dayton on Surrogates (3rd, ed., pp. 464, 465) lays down the following rules in regard to legacies and interest thereon: "When no time of payment is fixed, the executor is by law allowed one year from the testator's death, to ascertain and settle his affairs; at the end of which time the court, for the sake of general convenience, presumes the personal estate to have been reduced into possession. Upon that ground, interest is payable from that time, unless some earlier period is fixed by the will. If, indeed, a legacy is given in lieu of dower, or is decreed to be in satisfaction of a debt, the court always allows interest from the death of the testator. A further exception to the rule exists, in case of a legacy given to a child by a parent, whether by way of portion or not,

in which instance the court will give interest from death, to create a provision for its maintenance. This exception is confined to legacies in favor of infants, and has never been extended to a legacy given to an adult, nor does it apply to the case of a wife. Again, a legacy to a child whose support and maintenance are otherwise provided for by the bounty of the testator, like a legacy to a more distant relative, or to a stranger, is not payable and does not draw interest until one year after the death of the testator, where no time of payment is prescribed by the will. After the expiration of the year from the death of the testator, the legacy will carry interest. The provisions of the Revised Statutes relative to the payment of debts and legacies have not changed the rules as to the payment of interest on legacies. The object of the statute was only to allow a specified time to the executor or administrator after taking out letters to settle the estate. And it was not designed to affect or modify the rights of the parties interested in claims or legacies. An annuity bestowed by will, without mentioning any time of payment, is considered as commencing from the death of the testator, and the first payment as due at the expiration of one year, from which latter period interest may be claimed in cases where it is allowable at all."

"There is a distinction between income and an annuity. The former embraces only the net profits, after deducting all necessary expenses and charges. The latter is a fixed amount, directed to be paid absolutely and without contingency. A further distinction

has been taken between an annuity and a legacy for life. If an annuity is given, the first payment is made at the end of the year from the death. But if a legacy is given for life, with remainder over, it is laid down that no interest is due till the end of two years. It is only interest of the legacy, and till the legacy is payable, there is no fund to produce interest. However, a different doctrine prevails with respect to a bequest of the residue of the personal estate for life with remainder over; for it seems now to be established that the person taking the residue for life is entitled to the proceeds from the death of the testator " (id., p. 449).

Thus we see that text writers, and authors of works pertaining to legacies and the settlement of estates, agree as to the general doctrine in relation to the payment of legacies and the interest thereon; and these rules, practice and doctrine have been adopted and followed, both in England and this country, for more than one hundred years.

In Wheeler v. Ruthven (74 *N. Y.*, 431), ANDREWS, J., says: "The general rule is well settled that, where a general legacy is given without assigning any time for payment, it bears interest from the expiration of a year after the death of the testator."

In Williamson v. Williamson (6 *Paige*, 298), Chancellor WALWORTH holds that, where the interest or income of a residuary estate is given to a legatee for life, and no time is named for the commencement of such enjoyment, the legatee is entitled to the income of the clear residue, as afterwards ascertained, to be computed from the death of the testator; and that a

legacy to a child, whose support is otherwise provided for by the bounty of the testator, is not to draw interest until one year from the decease of the testator, where no time of payment is named by the will.

In Eichhold v. Greenebaum (1 *Chicago Legal News*, 210), it was held that a legacy to a widow did not draw interest until one year from the decease of the testator, there being no estate of which she was dowable, and nothing in the will indicating that it should be sooner paid.

In Miles v. Wister (5 *Binn.*, 479), TILGHMAN, Ch. J., says: "Where a legacy is given to a child, payable at the age of twenty-one, without mention of interest, the rule is that interest shall be allowed from the death of the parent, because it must be supposed that the parent intended to do his duty, and not leave the child without a maintenance; but this rule does not extend to legacies given to strangers or distant relatives, because none but a parent is bound to provide for a child. Courts of equity have gone great lengths to provide a maintenance for infants who are entitled to legacies payable at a future time."

The case of Weld v. Putnam (70 *Maine*, 209), was one where a life use of the residue of her estate, both real and personal, was given by testatrix in trust for the benefit of her sister, and Chief Justice APPLETON very properly held that she was entitled to the use from the death of the testatrix.

This is the general rule where the residue, or any aliquot part thereof, is given for life, with remainder over (see Williamson v. Williamson, *supra*).

Ayer v. Ayer (128 *Mass.*, 575), was a case where the testator gave to his brother Frederick the use of $100,000 during life, and on his decease to his children. Justice MORTON held that Frederick was entitled to interest from the death of the testator. By the general statutes of Massachusetts (ch. 97, § 23), it is declared that, when by a will an annuity or the rent, use, income or interest of any property, or the income of any fund is given to or in trust for the benefit of a person for life, he shall be entitled to receive the same from and after the decease of the testator. This decision is entirely in harmony with the decisions of that state. In some states there are statutes giving interest on life estates from the death of the testator. Where such laws exist, they are controlling, and the general rules of law do not apply.

In Bradner v. Faulkner (12 *N. Y.*, 472), the testator gave his daughter $16,000. The will was silent as to when interest should commence, and the rules of law were to govern. The Surrogate of Livingston county allowed Mrs. Faulkner interest on her legacy from the death of her father. This decision was affirmed at the General Term, and reversed by the Court of Appeals. The legatee was not an infant, was devised other property, and did not come within the exception to the general rule.

In Cooke v. Meeker (36 *N. Y.*, 15), the plaintiff was an infant, and, under the exception to the general rule, the court very properly allowed her interest from the testator's death. DAVIES, Ch. J., says: " By the Revised Statutes, no legacies are to be paid

until the expiration of one year from the time of granting letters testamentary unless the same are by the will directed to be sooner paid (2 R. S., 91, § 43). This is an affirmance of the doctrine of the common law and has not changed the rule as to the time when interest on legacies begins to run (3 *Bradf.*, 364). At common law the general rule was that interest upon a legacy is payable only at the expiration of a year from the testator's death (Toler on Ex., 324). If, however, an annuity.be given, or if, by implication from the terms of the instrument, the legacy be given for maintenance and support, it shall commence immediately from the death of the testator, and consequently the first payment shall be made at the expiration of the year next after that event."

BOCKES, J., in the same case, says: "At common law, when a legacy was given without specifying any time of payment, it vested in the legatee on the death of the testator, though not payable until one year afterwards."

In the case of Mary A. Fish (1 *Tucker*, 122; s. c. 19 *Abb.*, 209), Surrogate TUCKER held that interest on a general legacy did not commence until one year from the granting of letters, unless the will directed otherwise. Upon an appeal to the general term, the Surrogate's decree was reversed (31 *How. Pr.*, 172). INGRAHAM, P. J., says: "I concur in holding that the legatee was not entitled to interest until one year after the death of the testatrix. I see nothing in the statute nor in the case of Bradner v. Faulkner (12 *N. Y.*, 472), to the contrary. In Williamson v. Williamson (6 *Paige*, 298), the Chancellor states the rule to

be that the legatees are not entitled to interest until one year after the death of the testatrix. In Bradner v. Faulkner (*supra*), the question was whether interest was chargeable on the legacy from the death of the testator. It is evident that the attention of the court was not directed to a case of a residuary legatee, contesting a will for years, where the legacies were large, and where, if the views of the court below are sustained, the residuary estate is increased by litigation. I concur with BRADFORD, Surrogate, in Lawrence v. Embree (3 *Bradf.*, 364), that the object of the statute was only to allow a specific time for the executor to settle the estate, and it was not designed to affect or modify the rights of parties interested in claims or legacies, and that the old rule in equity governing the payment of interest whereby a legatee is entitled to interest after one year from the death of the testator is still in force. The plaintiff is entitled to interest after one year from the death of the testator."

In Lynch's Estate (2 *Redf.*, 434), and Lynch v. Mahony (52 *How. Pr.*, 367), the legacy in question was as follows : " I give to the executors of this my will the sum of $1,500, in trust to invest the same and pay the income thereof to my sister Ann, wife of Martin Mahony, of Saratoga Springs, during her life and, upon her death, to pay said sum to her children surviving her in equal shares." The case of Fish (*supra*), which was overruled at General Term; Cooke v. Meeker (*supra*), which was a case of an infant; Bradner v. Faulkner (*supra*), where it was held that interest did not commence at the death of the testa-

tor, and some other authorities, are cited. The learned Surrogate says: "I do not feel at liberty to disregard the plain and emphatic language of the learned Chief Justice, in Cooke v. Meeker, which may be presumed to have received the attention and scrutiny of the other judges of the court, though it may not have been necessary to the decision of this case. The two Pennsylvania cases, above cited, are also directly involved in this case upon this point; and, therefore, I am not able to resist the force of the argument to the contrary above suggested. I feel constrained to respect the above authorities, and to hold that the interest upon the legacy in question began to run from the decease of the testator, and that the executor be directed to pay accordingly."

In Pierce v. Chamberlain (41 *How. Pr.*, 501), the testator, by his will, required his executor to pay to Truman R. Coleman $4,000 (there was, at the testator's death, $40,000 on deposit with Coleman, drawing interest), to be invested by Coleman in the best manner, and the interest and income to be paid by him semiannually to the plaintiff (who was the testator's adopted daughter), during her life, and at her decease to pay the principal to her heirs, and directed his executors to pay the legacies mentioned in his will as fast as they might be able to do so, without sacrificing his estate. The testator died February 10th, 1868. On August 15th, 1868, $4,000 of the money on deposit with Coleman was formally transferred by the executors to Coleman, but the interest accruing intermediate those periods was withheld. The action by the plaintiff was to recover such

interest; and DANIELS, J., at special term, held that the plaintiff was entitled to interest from the date of the testator's death.   The case of Cooke v. Meeker (*supra*) is cited, wherein the plaintiff was an infant; and it does not appear but that the plaintiff in this case was an infant.   The last· two cases mentioned are about the only cases I have been able to find and examine, which would seem to sustain the doctrine claimed by Mrs. Carr, herein.

In Lawrence v. Embree (3 *Bradf.*, 364), which is very much like the case now before me, the testatrix gave to her nephew and his wife and the survivor of them, the interest, dividends or other income of $2,500, for and during their joint lives and the life of the survivor of them, and then the principal to their living children.   BRADFORD, Surrogate, says: " Generally, when no time of payment is fixed, legacies are not due until the lapse of a year from the death of the testator, and do not, of course, begin to earn interest until they become due.   But annuities are considered as commencing from the death of the testator, and the first payment due at the expiration of the year (Gibson v. Bott (7 *Ves.*, 96, 97; Fearns v. Young, 9 *id.*, 553; Stamper v. Pickering, 9 *Sim.*, 176).   There may be some ground for applying the reason of this rule to the legacies of the interest and income of certain specified sums.   But, in examining the cases, I do not perceive any distinction has been recognized between bequests of income and general legacies.   This will contains a clause authorizing the executors to invest the trust moneys, the· interest whereof is payable during the lifetime of several of

the before named legatees, and the principal to others upon their respective deaths, either in bonds and mortgages, or stocks, and there is no specified time when to make these investments, so that the general rule of allowing a year to make the investment would seem applicable.   Taking this bequest and this provision together, it would amount to a legacy of $2,500 to the executors in trust to invest and pay the income for life to the first takers, and the principal on their decease to their children, and in such case the sum given would not begin to draw interest until the expiration of the year.   The provision of the Revised Statutes, relative to the payment of debts and legacies, have not changed the rule as to the payment of interest.   The object of the statute was only to allow a specified time for the executor or administrator, after taking out letters, to settle the estate.   And it was not designed to affect or modify the rights of parties interested in claims or legacies.   If a delay in the probate is to deprive legatees of interest on their legacies, because the executor cannot be compelled by the Surrogate to pay before a certain time has elapsed after letters issued, a premium for delay and contention would be awarded, and great injustice sanctioned by law.   I am quite clear that the rules governing the payment of interest on testamentary bequests remain as they ever were, according to the established principles of the courts of law and equity."

Welsh v. Brown (2 *Am. Prob. R.*, 221; s. c., 43 *N. J. Law R.*, 37) is also a case almost precisely like this.   In that case, the testatrix made to the plaintiff the following bequest:  " I do give and

bequeath to my niece, Aletta Brown, my gold watch, my melodeon, my black ear-rings, my black furs, one set of silver teaspoons (second choice), my cashmere shawl, my brown silk dress, and the interest of $2,500, to be paid to her annually by my executor; and at her death, the said sum of $2,500 shall be paid or divided equally among any child or children of hers that may then be living." The action was brought by Miss Brown, the legatee, against the executor, to recover $175, one year's interest on said sum of $2,500, accruing between April 22d, 1874, the time of the death of the testatrix, and April 22d, 1875. The court below decided in favor of the plaintiff.

On appeal, the decision was reversed. DEPUE, J., in his very able and learned opinion, says: "With respect to general legacies, the law, for convenience, has prescribed a general rule that, where no time is named by the testator, and in the absence of any intention derived from the will itself, such general legacies shall be raised and satisfied out of the testator's estate at the expiration of one year after his death (2 Roper on Legacies, 1245; 2 Lead. Cas. in Eq., 639; notes to Ashburner v. MacGuire). On a legacy coming within the class of general legacies, if the legacy be not paid at the expiration of the year, interest from that time will be allowed as damages, and interest on a legacy will not be computed from a period prior to that time, unless there be a clear expression of intention that interest shall be reckoned from an antecedent time or event. In that case, the interest is regarded as the

substance of the gift, and is not recoverable as such unless there be a clear intention apparent on the face of the will that interest shall be payable from a period prior to the expiration of the year. The gift to the plaintiff is of the interest on a gross sum of $2,500, to be paid to her annually by the executor, and after the plaintiff's death the principal sum is payable to other parties. The will provides that the executor, after putting out at interest a sum sufficient to pay the interest and legacies bequeathed, shall divide the residue among the heirs of the testatrix. It further directs that all taxes on the money or interest bequeathed shall first be deducted, and the balance only paid, and that the said money or interest should be subject to the taxes, as long as it remains in the hands or under the control of the executor. In substance, the bequest is to the executor to invest and pay over the net income or interest after deducting taxes, to the life tenant during her natural life, and after her death to pay the principal to the legatees in remainder. The executor, in the administration of the estate as executor, was under no obligations to set apart the principal sum on which interest was to be allowed until the end of the first year, and until the separation was made there was no fund to produce interest for the life tenant. In legal effect, the bequest is analogous to those in Lowndes v. Lowndes (15 *Ves.*, 301) and Raven v. Waite (1 *Swanst.*, 553), upon which interest was allowed only from the expiration of the year. In my examination of the English cases, I have not found a single decision in which a bequest similar to that under consideration has

been considered as excluded from the general rule that the legacy shall, for such purposes, take effect after the lapse of a year. The distinction between an annuity, pure and simple, which is to be paid at all events out of the testator's estate, at the expense of the residuary legatee, and the interest or income for life of a certain sum set apart by the testator for that purpose, and given over in gross to another after the death of the life tenant has been quite uniformly adhered to. Baker v. Baker (6 *H. of L. Cas.*, 623) was decided upon that distinction. Lord CRANSWORTH, in delivering his opinion, said: 'In all these cases, arising upon the construction of wills, the real question is whether what is given is given as an annuity or is given as interest on a fund; and where that question is to be considered, what you must look to is this—whether the language of the testator imports that a sum at all events is annually to be paid out of his general estate, or only the interest, or a portion of the interest of a capital sum, which is to be set apart. This distinction is recognized by Lord Justice ROLT, in Birch v. Sherratt (*L. R.*, 2 *Ch. App.*, 649). The principle upon which it rests is that a bequest of a specific sum of money is one gift, one legacy, the benefit of which the testator has apportioned between the donee for life and the remainderman. To the life tenant he has given the interest or produce of the fund during life, and the capital sum to the remainderman after the death of the former. Such a legacy is, therefore, subject to the rule that general legacies are to take effect and be payable at the expiration of one year from the testator's death.

The executor is not bound to set apart the legacy for investment, before the end of the year, and until that be done, there is no fund to produce the interest that is payable to the life tenant.' "

The authorities which I have cited and so extensively quoted from would seem to determine the general rule in regard to legacies and the interest thereon, and by which this case should be decided.   These authorities are substantially in harmony, each with the other, with the exception of Lynch v. Mahony and Pierce v. Chamberlain (*supra*), the former a decision made by the Surrogate of New York, the latter a special term decision made by Judge DANIELS, both able judicial officers.   No appeal seems to have been taken in either case, and they were perhaps decided without much investigation as to the general rule.

In this case, the testator, by his will, after absolutely devising and bequeathing to Mrs. Carr his farm and household furniture, directs his executors to invest the sum of $4,000 in bonds and mortgages upon unincumbered real estate or government bonds, and, after paying the executor a suitable compensation for taking care of the funds, directs the balance of the interest to be paid to her annually, during life, and on her death the principal to her children.   No time is indicated by the will from which interest is to commence.

This legacy is not like an annuity of a certain amount, payable absolutely and without contingency from the residuary estate, or from a certain portion of the estate specially appropriated for that purpose, and payable out of the *corpus* of the estate, if the

income of the fund is insufficient for the purpose. Neither does it come within the exception to the general rule. For the legatee is not an infant; and if she were, other provisions are made for her maintenance; and for that reason her legacy would not draw interest until after one year from the death of the testator.

This legacy seems to come within the rule of general legacies,—which draw interest from one year after the death of the testator when no time is fixed or indicated by the will. Such has long been the fixed and settled rule and practice on the settlement of estates.

By statute, legacies are not payable until one year from the granting of letters testamentary. The object of this statute is, first, to give the executor ample time to reduce the estate into money; second, to allow him time to publish for six months notices to the creditors of the testator to present their claims, which notice cannot be published until six months after the issuing of letters; and, third, one year is allowed after the recording of a decree admitting a will to probate for persons interested in the estate of the decedent to present a petition praying that the probate thereof be revoked. It was evidently not the intention of the legislature, in postponing the payment of legacies, to change the old and well settled rule as to the interest thereon.

It has been contended that legacies do not draw interest until they become payable, which would be one year from the issuing of letters testamentary, where no time is fixed by the will. If such a rule

were to prevail, a residuary legatee of a large estate, who was intended to be given only a small or nominal sum, might, by causing a delay in the application for probate, by contesting the will, or inducing some one interested to contest the same, or by initiating a contest over the issuing of letters testamentary, delay the issuing of the latter for years, and create for himself a fortune at the expense of other legatees, and defeat the real intent of the testator under the apparent sanction of the law. The same rule would apply where the will was not found for many years after the testator's death. Such a rule is not favored, and has not, to any great extent, been followed on the settlement of estates.

A legacy of the residuum of an estate, or any aliquot part thereof, for life, with remainder over, gives to the legatee for life whatever interest or income the estate may earn, after the payment of debts and other legacies, from the death of the testator. A legacy in lieu of dower, or in satisfaction of a debt, also draws interest from the testator's death.

What is given by this legacy is $4,000 to one for life, with remainder over. No greater amount is given or attempted to be given. If no life estate were attached, no interest would or could be claimed, under any rule of law, until one year after the testator's death.

A life estate in a general legacy of a specified amount neither increases nor decreases it. The executor is not compelled to invest the amount until the twelve months have elapsed, and the earnings of it for the first year, if invested, belong to the residuary

legatee.   What the testator has done is to apportion
the legacy.   To Mrs. Carr he has given what it may
earn from and after one year from the time of his
decease, and to her children he has given the prin-
cipal, on the happening of that event.

If the testator had intended that the legacy should
draw interest from the time of his decease, he could
easily have indicated such intention in and by his will.
In the absence of any mention or indication in his will,
it must be presumed that he intended to apply the .
general rule, which gives interest from and after one
year from his decease, payable at the expiration of
two years from that event.

The mere mention by the testator, in his will, that,
after his debts and funeral expenses are paid, he gives,
bequeaths, etc., does not postpone the payment of
legacies and interest thereon until after the actual
payment of all debts, provided the estate is ample to
pay both debts and legacies.   It is the usual expres-
sion, and amounts to nothing.   Debts, funeral expen-
ses, etc., have to be first paid or provided for, before
legacies are paid, whether any such expression occurs
in the will or not.

After a thorough examination of the authorities, I
reach the conclusion that the legacy to Mrs. Carr for
life, and then to her children, is a general legacy;
that she is entitled to interest thereon from and after
one year from the decease of the testator; and that
interest thereon became due and payable at the expi-
ration of two years from such decease.

The general rules, in regard to the payment of
legacies, where no time is fixed or indicated by the

will, together with the interest thereon, may be stated thus:

1st.  Specific legacies are considered as severed from the bulk of the testator's property, by the operation of the will, from the death of the testator, and as specifically appropriated, with the income and increase thereof, for the benefit of the legatee, from that period; and interest is computed thereon from the death of the testator.

2d.  By statute, general legacies are not payable until one year from the issuing of letters testamentary, but draw interest from the expiration of one year after the testator's death, as at common law.

3rd.  A legacy given to a widow, in lieu of dower, where the testator died seized of real estate of which she was dowable, draws interest from the death of the testator.

4th.  A legacy given in satisfaction of a debt, draws interest from the testator's death.

5th.  A legacy given to a child of the testator, or one to whom the testator has placed himself in loco parentis, will, if such child is an infant, and is not otherwise provided for by the testator's bounty, or in some other way, draw interest from the testator's death, to provide means for the support and maintenance of such infant child; the amount of interest for the first year to be fixed by the court according to circumstances, not, however, to exceed the amount necessary for the proper support, education and maintenance of such infant during the year succeeding the testator's death.

6th.  An annuity draws interest from the death of

the testator, in the absence of any direction contained in the will, to the contrary.

*7th.* A general legacy of a specific amount, bequeathed to one for life, with remainder over, on the death of the life tenant, will begin to draw interest at the end of twelve months from the death of the testator; and the first payment of interest will become due thereon at the expiration of the second year.

*8th.* A life tenant of the residue of the testator's estate will be entitled to the net earnings of such residue from the testator's death, after providing for the payment of debts and other legacies.