ABRAHAM V. VAN FLEET AND JOHN T. BIRD, ESQS.,
VICE-CHANCELLORS.

JOHN T. MARSH and STEWART C. MARSH

*v.*

HENRY B. TAYLOR, executor of the will of Stewart C. Marsh,
deceased.

| 43 | 1 |
|----|-----|
| 44 | 488 |
| 43 | 1 |
| 51 | 437 |

1. Interest on a legacy may be recovered after the expiration of one year from the testator's death, as damages for delay in its payment.

2. Where a legacy is given to a minor child, or to one to whom the testator stood *in loco parentis*, for whose support no provision is made by the will, in-

1

terest upon the legacy will be allowed from the testator's death, as a provision for maintenance.

3. The rule above stated, in favor of a minor child, does not extend to a minor grandchild as such.

4. On bequest of the residue of the testator's estate, or of some aliquot part of it, in trust, to pay the interest to a legatee for life, with the gift of the principal over at death, the interest or income payable to the tenant for life will be computed from the testator's death.

5. And where in such a bequest it is provided that the interest shall be paid to the legatee semi-annually, the first payment will become due at the expiration of one year from the testator's death.

On hearing on demurrer.

*Mr. Frank E. Bradner*, for complainants.

*Mr. John W. Taylor*, for demurrant.

THE CHANCELLOR.

The bill was filed on December 1st, 1886, in behalf of the complainants, who are infants. It alleges that Stewart C. Marsh died in October, 1885, leaving a will dated on June 3d of that year; that in and by this will, after making provision for the payment of his debts, funeral and testamentary expenses, and the cost of the erection of a monument, and after giving to his son, Albert R. Marsh, the use of a building, with the furniture and fixtures therein, for his life, and to the complainants, who are his grandsons, property in Jerseyville, Illinois, and to others specific legacies, the testator provided as follows:

"*Seventh.* My will is that after all my debts and legacies are fully paid and satisfied by my executor, as above directed, then and in that case my will is, and I do give, devise and bequeath to my friend and executor hereinafter named, and to his executors and administrators forever, all the remainder of my estate, real and personal, whatsoever and wheresoever, not otherwise given and disposed of in this my will, in trust nevertheless, to dispose of the same in the manner following, viz.: To keep the same safely and securely invested in real estate, first bonds and mortgages, and government bonds, or on deposit in some reliable savings institution, and from the profits and interest arising therefrom, to pay all taxes, assessments and other expenses that may arise against my estate, and to keep in necessary repair all buildings, fences &c. which may be erected thereon.

Marsh *v.* Taylor.

"*Eighth.* From the unused interest and profits, I further direct my executor, or his successor, to pay to the aforesaid John and Stewart, and to each of them, one-quarter of the same, in semi-annual payments, during the lifetime of their father, the remaining one-half to be paid to Albert R. Marsh, in semi-annual payments, during his natural life; and at his decease, to divide my estate equally between my grandchildren, or the survivors of them, share alike, to them, their heirs and assigns forever."

The bill further alleges that the defendant, Henry B. Taylor, was appointed sole executor of the will, and that upon the admission of the will to probate, on the 9th day of November, 1885, he assumed the executorship; that the residue of the estate, after the payment of the debts, legacies &c., is about $100,000, and consists of productive real estate, and bonds secured by first mortgages, and other personal property, from which the executor has received income since the death of the testator, which he has allowed to accumulate in his hands; that the executor has paid to Albert R. Marsh about $1,000, but has not paid any moneys to complainants; that complainants need money for their support and education; and also that the testator left three grandchildren him surviving, the complainants, and Albert Marsh, an infant.

It prays that the executor may account for the income from the principal of the estate, and be decreed to pay to each of the complainants one-quarter of the unexpended interest and profits from the death of the testator; and that complainants may have such other and further relief as the nature of the case may require &c.

To this bill the executor demurs, on the grounds that it fails to show a case for equitable relief, and it has not been made to appear that at the time of the filing of the bill the complainants were entitled to the payment to them of any of the income, interest and profits that may have accrued since the death of the testator, or that they are entitled to an account as prayed for.

The position taken for the complainants at the argument was that they are entitled to a share of the clear income of the residue, as minor grandchildren of the testator in need of the money for their support and education.

It is the rule that an executor cannot be compelled to pay a general legacy until the expiration of one year from the testator's death, and that interest on the legacy may be recovered after the expiration of the year, as damages for the delay in payment.

Where, however, the legacy is to a minor child of the testator, or to one to whom the testator stool *in loco parentis*, interest will be allowed from the testator's death, as a provision for maintenance, where no provision is made by will or otherwise for the support of such legatee. *Welsh* v. *Brown, 14 Vr. 40,* and cases cited.

This exception in favor of minor child without maintenance does not extend to minor grandchildren. *Brinkerhoff* v. *Merselis, 4 Zab. 682; Howard* v. *Francis, 3 Stew. Eq. 448.*

The proper definition of a person *in loco parentis*, to use the words of Chief-Justice Green, in *Brinkerhoff* v. *Merselis*, "is a person who means to put himself in the situation of a lawful father of the child, with reference to the father's office and duty of making provision for the child."

The bill does not contain allegations to sustain this relationship between the complainants and the testator.

On the contrary, it shows that the father of the complainants is alive, and that he has been provided, by the will, with a house, a business and an income.

The duty of the maintenance of his minor children is upon him, and we cannot assume, from the mere fact that his children are objects of their grandfather's bounty, that the grandfather was *in loco parentis* to them.

Although the complainants have no right to the interest they seek upon this ground, I think they are entitled to it upon another ground, which lies in a further exception to the rule that interest upon a general legacy is to be computed from the expiration of one year from the testator's death. This rule may be stated, in the language of Justice Depue, in *Welsh* v. *Brown*, above cited, as follows: "On bequest of the residue of the testator's estate, or of some aliquot part or portion thereof, in trust to pay the interest or income to a legatee for life, with the gift

of the principal over at his death, the interest or income payable to the tenant for life will be computed from the testator's death."

This exception is well supported by authority. *Green* v. *Green, 3 Stew. Eq. 456; S. C., 5 Stew. Eq. 773; Van Blarcom* v. *Dager, 4 Stew. Eq. 795; Williamson* v. *Williamson, 6 Paige 304; 2 Perry on Trusts § 550; 2 Roper on Leg. 1322; 2 Redfield on Wills 472.*

Its reason is founded upon the injustice it would work to the life tenant to give a year's interest to the remainderman by treating it as part of the principal.

In the case in hand the testator intended that the complainants and their father should have the use of the residue of his estate (beyond that which should be necessary to pay his debts and legacies), during the father's life, and to carry out his purpose he gave to each of the complainants one-quarter, and to their father one-half, of the net income during that life.

At the death of the father the principal of the trust fund is to be divided between all the testator's grandchildren, or to the survivors or survivor of them. At present, if the father should die, the complainants and their brother would take the principal; but their taking with the brother alone, or, indeed, their taking at all, will depend upon contingencies. *Schouler on Wills § 530.*

It is important, then, in adjusting the rights in the net income of the residuary estate, that the character of the complainants, as life tenants and as possible remaindermen, shall be kept distinct.

Chancellor Walworth, in *Williamson* v. *Williamson,* above cited, says: "All the cases which appear to conflict with this rule, except two decided by Sir John Leach (*Stopp* v. *Hollingsworth, 3 Madd. 161,* and *Amphlett* v. *Parke, 1 Sim. 280*), which are no longer to be considered as authorities, will be found to be cases in which the testator has directed one species of property to be converted into another, or the residuary fund to be invested in a particular manner, and has then given a life estate in the fund as thus converted or invested.

" In such cases it appears to be consistent with the will of the testator to consider the life interest as commencing when the conversion takes place or the investment is made, either within the

year or at the expiration of that time; but as a year is a reasonable time to comply with the testator's directions as to the conversion or investment, the legatee for life cannot be kept out of the interest or income beyond that period."

In the will before us the direction is to *keep* the residue invested in real estate, first bonds and mortgages &c.

The bill alleges that the testator died seized of improved income-producing real estate, free from encumbrances, and the owner of personal property of considerable value, consisting principally of "first bonds and mortgages."

The will does not contemplate the conversion of such property, and I think it sufficiently appears that, in fact, there was no conversion of it.

It is shown that the testator also had other personal property, which it would be necessary to convert into money and invest according to the directions of the will; but whether the last-mentioned property was converted during the year, pursuant to the will, does not appear.

It is alleged that the executor has in hand accumulated net income, which he received from the residuary estate during the year following the death of the testator. The complainants are entitled to their share of it, and to ascertain exactly the amounts that should in equity be paid to them there must be an accounting under the direction of this court.

The payment of this interest was due to them at the end of the year from the death of the testator. The executor had the right to withhold payment until the year had expired, the period within which it is presumed he paid the debts and legacies and ascertained the residue.

I can see no controlling force in the insistment by the counsel for the executor, that because of the provision in the will as to the semi-annual payments, the executor was not obliged to pay the interest which accrued within the first year until the expiration of eighteen months from the testator's death. When, at the expiration of the year, the residuary estate was definitely ascertained and passed to him in trust, the interest accrued and received upon it, which was not part of the body of the trust

fund, was payable to the life tenants.    *Green* v. *Green, 3 Stew. Eq. 456.*

In *Lovering* v. *Minot, 9 Cush. 151*, the testator gave all the residue of his estate, real and personal, in trust to trustees to manage it and pay the net income to his five children—one-fifth to each—during their respective lives half-yearly or oftener, and then over.    Chief-Justice Shaw says:   " The first question is whether the plaintiff, as one of the five children to whom the income of the residue was given, after paying the debts and legacies and setting apart sums given in trust to raise annuities, is entitled to the income which accrued during the first year after the testator's decease."    And, after deciding this question in the affirmative, he says:   " And although it could not be immediately paid over, because the executors could not know how much would be wanted and what the residue would be, yet the accounts, when afterwards made up, would show what part of the income accrued from capital and what part from income accumulated, and then the income due to each would be ascertained.

" We think, therefore, that when the funds were transferred from the executors to the trustees, the assets showing what was received from income and what from capital, it was the duty of the trustees to distribute that part of it which was composed of interest and retain the amount of capital as it existed at the decease of the testator, as the capital sum constituting the residue to be invested and held under the trust."

The demurrer will be overruled, with costs.