Lawrence v. Security Co.

In this opinion the other judges concurred; except CAR-PENTER, J., who dissented.

---

## JAMES J. LAWRENCE vs. THE SECURITY COMPANY.

Hartford Dist., March T.,1888. PARK, C. J., PARDEE, LOOMIS, BEARDS-LEY and ANDREWS, Js.

Where there is a bequest of the whole or of an aliquot part of the residue of an estate to a legatee for life, with remainder over, and no time is fixed by the will for the commencement of the life use, the legatee is entitled to the income from the clear residue, as the same may be at last ascertained, to be computed from the death of the testator.

A testator left two fifths of the residue of his estate in trust for his daughter C for life, remainder over. Between his death and the order of distribution a little over a year later, the estate earned in the hands of the executors $4,600, which they, supposing it belonged to the estate, added to the principal, and the whole sum was, by order of the probate court, distributed as the residue, two fifths being paid to the trustee for C's life use. The distributors made return of the distribution, which was accepted by the court, and no appeal was taken by C, who was in all respects capable of acting for herself. Held that, the probate court having full jurisdiction, its decree had settled the rights of the parties interested in the residue distributed, and that the part of the income to which C was entitled had become by it merged in and a part of the principal of the trust fund, and that it could not, some time afterwards, be attached by his creditors in the hands of the trustee as still due her.

During the year following the death of the testator the executors had paid over to the trustee $25,000 as a part of the two fifths of the residue which was to be distributed to the trustee for the life use of C, and this sum had earned in the trustee's hands, before the distribution, the sum of $431. This sum the trustee, supposing it to belong to the estate and not to C, had paid to the executors, and it had gone into the residue and been distributed as a part of it, and was embraced in the probate decree before mentioned. Held that, while it had, by force of the probate decree, become merged in the principal of the residue, and had in part gone into the principal of the trust fund, so that C could not reclaim it as between herself and the remaindermen, yet, as it had been wrongfully paid by the trustee to the executors and not to C, he could not charge it to her in his trust account, but it remained a debt due her from the trustee, which could be attached in his hands by her creditors as still due her.

And this although the trustee had, under a statute requirement, presented to the probate court his trust account for that time, in which he had credited himself with this payment as a proper charge against C, and the account had been accepted by the court.

Where an estate has been legally brought into a probate court for settlement, the court takes jurisdiction of it for all purposes until it is settled; but where under a decree of the court property of the estate is distributed to a trustee, the trust estate becomes a distinct matter, and the trustee's account can be brought into the probate court for a settlement conclusive upon the parties in interest only by notice to them. The filing in court of an inventory of the trust estate and the rendering of an annual account to the court under Gen. Statutes, § 498, does not supersede the necessity of such notice.

A creditor of C brought a suit against her and garnished the trustee. The latter made disclosure to the officer, under a statute provision, that he was not indebted. The creditor, believing this to be true, and with no knowledge at the time of the facts upon which an indebtedness of the trustee was finally established, presented his claim against her insolvent estate with no acknowledgment of any security held, (as required by Gen. Statutes, § 590,) and it was allowed by the commissioners in full, with no deduction on account of the security. Held that the matter was one for the commissioners to determine, or the Superior Court on an appeal from their action, as one wholly between the creditor and the estate, and that the right of the creditor to his security was not affected by his action in the matter or by that of the commissioners.

The creditor had obtained judgment against C in his suit, and had brought an action of scire facias against the trustee upon the garnishment, and afterwards brought an action of debt on the judgment as a step in a proceeding to carry her into insolvency. Held that the law would not regard him as having by bringing the latter suit abandoned his claim under the first one.

C had been allowed by the probate court, as the family of the testator, $1,500 for her support during the settlement of the estate—an allowance which was unnecessary if, as now held, she was entitled to the income from her share of the residue from the death of the testator. Held that the allowance rested in the discretion of the probate court and was wholly a matter for that court to determine, that it could not be reviewed collaterally by the Superior Court, and that C's right to the income from her share of the residue from the death of the testator could not be affected by it.

[Argued March 8th—decided July 7th, 1888.]

SCIRE FACIAS upon a process of foreign attachment; brought to the Superior Court in Hartford County.

The plaintiff sued as the surviving member of the firm

of Brewster & Company. The original action was brought by the firm on the 24th day of May, 1884, and the present defendant, a trust corporation, acting as trustee for Sarah S. Cowen, was garnished as having her effects in its hands and as indebted to her. The Superior Court (*Sanford, J.,*) made a finding of the facts and rendered judgment for the defendant, and the plaintiff appealed. The case is fully stated in the opinion.

*E. S. White* and *H. R. Mills*, for the appellant.

1. Mrs. Cowen was entitled to the income accruing before distribution from the two fifths of the residue of Mr. Tyler's estate bequeathed to her for her life use. It is well established that the beneficiary for life shall be entitled to the income, in one shape or another, from the death of the testator; and this, notwithstanding the life income is to be derived from a residuary fund which might not be ascertainable for two years or more. Schouler's Exrs. & Admrs., § 479; Jarman on Wills (Bigelow's ed.), 606–612; *Clement* v. *Brainard*, 46 Conn., 185; *Bartlett* v. *Slater*, 53 id., 106; *Minot* v. *Amory*, 2 Cush., 377; *Lovering* v. *Minot*, 9 id., 151, 157; *Pollock* v. *Learned*, 102 Mass., 49, 54; *Sargent* v. *Sargent*, 103 id., 297; *Ayer* v. *Ayer*, 128 id., 575; *Williamson* v. *Williamson*, 6 Paige, 298, 304; *Cooke* v. *Meeker*, 36 N. York, 15, 20; *Angerstein* v. *Martin*, Turn. & Russ., 234; *Hewitt* v. *Morris*, id., 241. The interest accruing prior to November 1st, 1881, on the $10,000 and $15,000 paid to the defendant as trustee, on June 15th and August 20th, 1881, clearly belonged to Mrs. Cowen. These sums had been paid to the defendant as a part of the money appropriated by the executors for the creation of the trust estate, and the payment to the executors of interest thereafter accruing on the same cannot, we submit, be justified on any ground which the law deems sufficient.

2. If Mrs. Cowen was entitled to income accruing prior to distribution, then, on May 29th, 1884, when the defendant was garnished, it was liable to her to the amount of such rent and income belonging to her which it had received.

It is found that "all the interest, rents and dividends, amounting to $5,110.21, accruing from the decease of the testator to November 1st, 1881," were included in the distribution, and two fifths thereof was consequently paid to the defendant, in the cash distributed to it as trustee. Also that " the defendant received and treated all that was distributed to it as constituting the principal of said trust, and none of the rents and income accruing before November 1st, 1881, were paid to Mrs. Cowen by the executors or the defendant." The plaintiff, therefore, claims that of the amount distributed to the trustee, about the sum of $2,000 (less the one third thereof due to Sophia T.), belonged to Mrs. Cowen, and that on May 29th, 1884, the defendant was liable to her therefor. If she had ever had a right to look to the executors for such income, she could not then look to them, but she could look to the defendant as the person who had received and was in possession of such money. Acts of 1875, ch. 18, §§ 1, 2. The correct view would seem to be that Mrs. Cowen was without any legal right to enforce payment against any one but her trustee. A voluntary payment to her by the executors of any income to which she was entitled would have doubtless been a proper credit, on their accounting to her trustee, but the trustee was the only one probably to whom the executors were legally obliged, under the will, to make payment. And the defendant was then liable to her to that amount in damages for its failure to duly execute the trust. A due execution of the provisions of the will, according to law, was the obligation imposed upon it by its acceptance of the trust. In the discharge of the obligations of such trust it was its duty to collect the rents and income and pay over the same to Mrs. Cowen. *Prindle* v. *Holcomb*, 45 Conn., 120. Such duty could not be duly discharged except by a collection and payment to her of *all* the income to which she was entitled, and in neglecting to pay her such as accrued prior to November 1st, 1881, to which she was entitled, the defendant failed to discharge its obligation to her, and became liable to her for such failure.

3. The defendant was never in fact discharged by Mrs. Cowen from its liability to her for any of such income accruing prior to November 1st, 1881, and the matters alleged in the defendant's answer, and found true by the court, do not amount to a discharge of such liability by operation of law. —(1.) The allowance made to her, as the family of the testator, manifestly could not " be legally charged as made from rents and income." That allowance was by the grace of the probate court, and entirely independent of the testator's will and Mrs. Cowen's. rights thereunder, and its acceptance could not be a waiver or forfeiture of any of her rights or benefits thereby created. It was a matter too entirely within the sole jurisdiction of that court and cannot be considered by this court.—(2.) As to the distribution. Mrs. Cowen had no occasion to object thereto or any reason to appeal from the order of the court accepting the same. The effect of those proceedings was to transfer to her trustee all the estate in which she had any interest by the fourth clause of the will; and had there been any reason to object thereto or appeal therefrom, it would have been the duty, not of Mrs. Cowen, but of the defendant as her trustee, to make objection and take an appeal. The trustee was the person who was entitled to the possession of whatever there was of either principal or income of the trust estate. In fact Mrs. Cowen was not legally aggrieved by any act of the distributors, for we believe it to be true, as they say, that they "set out and distributed the same according to the will," and had Mrs. Cowen's trustee thereafter duly executed the trust (and she, at that time, was certainly bound to assume that it would), no injustice could have been done her. Suppose she had taken an appeal from the order accepting the distribution, on the ground that all the income accruing prior to November 1st, 1881, to which she was entitled, had been distributed and paid to her trustee, would not her appeal have been summarily dismissed, upon the very ground that, by the will, her trustee was entitled to such payment, and that she had a perfect remedy therefor against him ?— (3.) The filing of the annual accounts in the probate court

and the action of the court thereon could not operate to discharge the defendant's liability to Mrs. Cowen for such income; for it is well settled that the action of such courts in respect to such accounts is not conclusive of the right of the parties entitled to the trust fund or the income thereof. *Prindle* v. *Holcomb,* 45 Conn., 111, 124; *Parsons* v. *Lyman,* 32 id., 566, 576. Since these cases were decided the powers of probate courts have been enlarged by statute (Acts of 1881, ch. 36), and they now have authority to call testamentary trustees to account. Their proceedings, however, in such matters, as to persons who are not present and have had no notice to appear, are *coram non judice,* and therefore in no way binding or conclusive; for it is a principle in the administration of justice of universal obligation that a person shall have notice of proceedings against him before his rights can be barred by a judgment. *Starr* v. *Scott,* 8 Conn., 480, 483; *Parsons* v. *Lyman,* 32 id., 576. It is found that when these annual accounts were filed in the probate court " Mrs Cowan was not present, and had no notice to be present, or any knowledge thereof, and no notice concerning the exhibition of said accounts in said court was given by said trustee or said probate court." And all that was done in relation to the accounts is told in the finding in these words : " Upon each annual exhibition of said accounts the trustee made oath before said probate court that said accounts were correct, and thereupon the court accepted the same, and indorsed thereon the words ' exhibited, sworn to and accepted,' with the respective dates, and recorded the same together with the words ' exhibited, sworn to and accepted ' in the records of said court; but that part of each account which stated the items composing the principal of the estate was not recorded at length on the record books of said court, but was filed among the files of said court." It certainly cannot require argument to show that these annual accounts were never adjusted and allowed by the court in any such way as to make its action conclusive of the rights of Mrs. Cowen against her trustee or operate as a discharge of the liability of the latter to her in respect to the matter in

question here.—(4.) The suit and garnishment of March 15th, 1887, did not operate to discharge the defendant from its liability upon the original garnishment of May 29th, 1884. The legal effect of the first garnishment was to secure in the defendant's hands whatever it then owed Mrs. Cowen, to be applied on any judgment recovered in the case upon demand duly made within sixty days thereafter. The legal effect of the second garnishing attachment would have been to secure in the defendant's hands whatever it was then owing Mrs. Cowen, subject, as to any sum due on May 29th, 1884, to the attachment of that date, to be applied on any judgment rendered in the case upon demand duly made within sixty days after its rendition. The second suit was not prosecuted to judgment, but was pending at, and abated by, the death of Mrs. Cowen. If the defendant was indebted on March 15th, 1887, to Mrs. Cowen, in any sum that had accrued subsequent to May 29th, 1884, such debt could not have been attached in any other way, and certainly her creditors had a right, to at least attempt the collection of their judgment in the way they did, and no reason seems to exist why the method attempted should be held to be a waiver or release of their rights upon the earlier garnishment. But this second suit it is found was brought as a necessary step under the statute to the institution of proceedings to carry Mrs. Cowen into insolvency. This alone would be enough to make the second suit a legal one and to show that there could have been no intentional abandonment of the lien obtained by the first attachment. But the defendant having by its disclosures of no indebtedness induced the creditors of Mrs. Cowen to believe that it owed her nothing, is now estopped from claiming, after the second attachment has been dissolved by insolvency proceedings, that the first was discharged by the second suit and garnishment.

4. The presentation and allowance of the plaintiff's claim against Mrs. Cowen's insolvent estate, with no deduction for security held, does not constitute any reasonable ground of defense. The plaintiff's claim, after demand of this defendant on the execution, was not in the nature of a lien on any

of Mrs. Cowen's estate, but the defendant had then become liable as for its own proper debt. Gen. Statutes, § 1253. The liability of the defendant then was substantially the same as that of an indorser of a promissory note duly protested for non-payment. Under the act of 1885, (Acts 1885, p. 510, sec. 182,) a creditor is under no obligation, in presenting his claim, to name or value his security; but if he were, any omission to do so would not be a waiver of his rights thereto. *First National Bank* v. *Hartford Life & Annuity Ins. Co.*, 45 Conn., 22. Besides, the matter was wholly one for the commissioners on the estate to act upon, and the Superior Court cannot consider it unless brought before it by an appeal from their action. This defendant clearly cannot set up the matter in his defense.

*G. G. Sill*, for the appellee.

1. Was Mrs. Cowen, under the will of her father, as the life tenant of an aliquot part of the residue of his estate, entitled to any part of the income of his estate from the date of his death, or from one year thereafter, or from the time of distribution? The will makes no provision on this point, so that her rights are determined by the common law, and by this no legacies are payable till the expiration of one year from the death of the testator. 1 Swift's Dig., 454. The question is a new one in this state, and the adoption of the plaintiff's claim will introduce a new and complicated method of accounting by executors. An approximate settlement of this question was made in the case of *Bartlett* v. *Slater*, 53 Conn., 102. A general legacy of one million dollars was given to a granddaughter for life, with remainder over, and made payable within one year from the death of the testator. This legacy was taken from the *corpus* of the estate and was not an aliquot part of the residuum. The court held she was not entitled to interest from the death of the testator. A legacy carved from the body of the estate and given to a life tenant bears no interest the first year, yet it is claimed that a life tenant of part of the residue is so entitled. The first legacy is a known

quantity; that bears no interest. The second is an unknown quantity, why should that bear interest from the death of the testator? Schouler, in his work on Executors, § 479, says the English equity courts have adopted the rule that a residuary legatee for life is entitled to the income from the date of the testator's death. But an examination of the English cases does not sustain the broad position claimed. For it will appear that the courts were influenced by the provisions of the will, and when not by the will, by the fact that no provision was made for the support of the legatee for life until the income could be used; but when there was a provision for that purpose, either by a legacy in fee, or, as in this case, both by a legacy in fee and an allowance by the probate court of $1,500 for the support of Mrs. Cowen, the income from the date of the testator's death was not paid to the tenant for life. It may be conceded that Massachusetts has adopted a different rule, and so did Chancellor WALWORTH, if one can understand his meaning. This rule makes it the duty of an executor to pay the debts and charges from the principal of the estate and not incorporate any income into the principal when distribution is made. The English courts have treated the matter as one of equitable jurisdiction, and no case can be found where a tenant for life in part of the residue, had a legacy in fee and also an allowance for support and then was held entitled to the income from the death of the testator. Lord ELDON in *Gibson* v. *Bott*, 7 Ves., 96, states the only logical conclusion in this matter. He says—" If a legacy is given for life, with remainder over, no interest is due till the end of two years. It is only the interest of the legacy; and till the legacy is payable there is no fund to produce interest." Mrs. Cowen clearly should not be allowed the interest and the $1,500 allowed for her support by the probate court. That should be treated as so much interest advanced to her.

2. There was an intentional relinquishment of the attachment lien of the first suit. Had Mrs. Cowen lived beyond the time limited by law for bringing a *scire facias* on the

judgment, or had a new judgment been obtained within the limited time, the lien of the first attachment would in either case have been dissolved; in one case by lapse of time, and in the other by the merger of the first judgment in the second. The first judgment being extinguished by the new one, the lien was at the same time lost or dissolved. The lien could not remain, for it had nothing to rest upon. A *scire facias* is not an original process, but only the means of enforcing a judgment, and when the judgment is merged in a new one there is left no judgment to enforce. *Ensworth* v. *Davenport*, 9 Conn., 392; *Smyth* v. *Ripley*, 32 id., 156. The plaintiff claims that while these positions are correct, yet as Mrs. Cowen died within the time limited for bringing a *scire facias*, and no new judgment was obtained, he stands as though nothing had been done. This might be true if the abandonment of the second suit had been the voluntary act of the plaintiffs. Her opportune death alone restores the plaintiff to the position which he had voluntarily abandoned. A waiver is the *intentional* relinquishment of a known right. *Hoxie* v. *Home Ins. Co.*, 32 Conn., 40. When the plaintiff began the second suit and again factorized the Security Company, he intended to obtain a new judgment, knowing that thereby the first one would become merged and the attachment lien destroyed. If he failed in his purpose by the decease of Mrs. Cowen, that fact did not affect the object he had in view when he instituted the suit. His intention was manifested by what he did, not by her death, over which he had no control.

3. There was a distribution of this estate and a certain portion was set to the Security Company as trustee, and from the order of the probate court accepting the same no appeal was taken either by the trustee or any beneficiary. The estate set to the trustee was distributed as *principal*, not as *income* in part, and was accepted as *principal* by all parties in interest. The plaintiff now seeks by *scire facias* to set aside, in effect, this distribution, to which suit the only party is the plaintiff and the trustee. The surviving beneficiaries and the remaindermen are not parties, al-

though their interests are involved and manifestly affected. The decree of the probate court was conclusive upon the trustee, beneficiaries and remaindermen, as the distribution was within its jurisdiction. *Lockwood* v. *Sturdevant,* 6 Conn., 388; *Gates* v. *Treat,* 17 id., 392. This plaintiff at the time of the distribution had no interest in the estate or claim against Mrs. Cowen, but he now seeks, upon a claim which arose subsequently, to impeach this judgment, not by direct action but collaterally. This cannot be done. *Huntington* v. *Birch,* 12 Conn., 151. The rights of the trustee, beneficiaries and remaindermen were fixed by the decree of the probate court and it cannot be impugned or contradicted so long as it remains in force and unreversed. *Canaan* v. *Greenwoods Turnpike Co.,* 1 Conn., 1, 7; *Goodrich* v. *Thompson,* 4 Day, 221. The decree of the probate court in the present case fixed the amount of the trust estate and no one interested took any appeal. It then conclusively determined the rights of all parties and a subsequent creditor of a beneficiary cannot do what the beneficiary could not do.

4. The decrees of the probate court in adjusting and allowing the trustee's annual account, are also conclusive upon the parties. These yearly decrees find what was *income* and what was *principal,* and unappealed from are conclusive like any other decree. Prior to the act of 1881 the probate court had no authority to adjust and allow these accounts. *Parsons* v. *Lyman,* 32 Conn., 566; *Prindle* v. *Holcomb,* 45 id., 111. To remedy this defect that act was passed, and since then a settlement in a probate court is conclusive. It provides for notice to the parties in interest and for an appeal from the decree of the court. And that decree of the court is final, unless appealed from, like other orders and decrees of that court. They are final and conclusive, so long as they remain unreversed. That no notice was given to Mrs. Cowen, and that she was not present, does not affect its validity or finality. The only effect is to extend the time of appeal. *Hiscox's Appeal from Probate,* 29 Conn., 561. If the action of the court was irregular, it cannot be

attacked collaterally by the creditors of Mrs. Cowen. The proceedings were not void, at most only voidable, and could be set aside only by direct application for that purpose. If the court in making its record does not use the words "adjust and allow," it is to be conclusively presumed that the court did its duty, and from the fact that these accounts were exhibited, sworn to and accepted, that they were "adjusted and allowed."

5. The plaintiff, by presenting his claim against Mrs. Cowen's estate as wholly unsecured, waived his attachment lien and is estopped from now claiming a lien. Gen. Statutes, § 590. Could he take a dividend on his whole claim and then resort to his security for the remainder? Suppose the dividend was fifty per cent. and the value of security was fifty per cent. also. In that event he would be paid in full. Had the security been valued, he would have received a dividend only on the amount of his claim above the value of the security. Thus he would have received about seventy-five per cent. of his claim instead of the whole. The law does not contemplate any such unequal distribution of an insolvent estate. The plaintiff by his action has in effect declared that he had in fact no security, or that, being small compared with the claim, he waives it and prefers a dividend on his claim as presented.

PARDEE, J. Frederick Tyler died on August 3d, 1880. By his will he devised two fifths of the residue of his estate, after payment of debts and specific legacies, in trust for the life use of his daughter, Mrs. Sarah S. Cowen, the remainder over. The trustees named by him declined the trust. On December 4th, 1880, the defendant, the Security Company, became, and still continues to be, the duly appointed trustee.

On October 29th, 1881, the executors exhibited an account to the probate court. It was accepted and distributors were appointed. On January 23d, 1882, the executors exhibited their final account and it was accepted. On February 2d, 1882, the distributors made return of distribution,

which was accepted. They distributed to the defendant as trustee for Mrs. Cowen real and personal estate of the value of nearly $40,000.

On June 15th, 1881, the executors paid to the defendant as such trustee the sum of $15,000, and on August 20th, 1881, the additional sum of $10,000. Between these respective dates and the first day of November, 1881, these sums earned in the hands of the defendant the sum of $431.34 as interest; and it subsequently delivered this last named sum to the executors, as being the property of the estate, on the ground that Mrs. Cowen was not entitled to any interest earned prior to distribution.

On the 24th day of May, 1884, the firm of Brewster & Company, as surviving partner of which the plaintiff brings the present suit of *scire facias*, instituted a civil action against Mrs. Cowen in the Superior Court for Hartford County, demanding $3,000 damages, and on the 29th day of that month caused due service of garnishment to be made upon the defendant as her agent, trustee and debtor.

On March 15th, 1887, they recovered judgment against her for $2,135.76 damages, and $75.17 costs; and on the same day instituted an action on the judgment against her, making due service of process of garnishment thereon upon the defendant as her agent, trustee and debtor. In both cases the officer serving the process called on the defendant, under Gen. Statutes, § 1234, to disclose as to whether it was indebted to Mrs. Cowen, and the defendant replied that it was not then indebted to her.

The officer not being able to find upon the latter process any property belonging to Mrs. Cowen, the firm on the same day filed their petition in the probate court, alleging the proceedings in that suit, and asking for the appointment of a trustee to take possession of her estate for the benefit of her creditors.

The suit was pending in the Superior Court at, and was abated by, her death on June 24th 1887. At the time of the commencement of this second suit Brewster & Co. had no reason for believing the disclosure of the defendant to be

untrue, and did believe it to be true and relied upon it, and their chief object in instituting the second suit was to make it the basis for proceedings in insolvency, and they did not until some time in April, 1887, know that no part of the income accruing from the estate between the date of the testator's death in August, 1880, and the first day of November, 1881, had been paid to Mrs. Cowen, or that any part of such income had been included in the amount distributed and paid over to the defendant as trustee.

The probate court allowed to Mrs. Cowen, and she accepted, the sum of $1,500 for her support during the settlement of the estate as the family of the testator.

On February 2d, 1882, the distributors made their return of distribution, which was accepted by the probate court. After deducting specific legacies, family allowances, debts and all other charges, the residue left for distribution amounted to $99,425.51, which amount included the estate inventoried, increase in value of stocks, proceeds of sales, and all interest, rents and dividends, amounting to $5,110.21, accruing from the death of the testator to November, 1881; and in payment of debts and charges, and in the distribution, no distinction was made between principal and income. The defendant as such trustee received two fifths of the residue so made up and treated the whole as the principal of the trust fund.

The executors did not pay to Mrs. Cowen any part of the interest, rents or dividends accruing before November 1st, 1881, unless the allowance of $1,500 to her as the family of the testator can legally be so treated.

Neither Mrs. Cowen, nor the defendant, nor any person in her behalf, objected to the distribution or appealed from the decree of the probate court accepting it.

In February, 1883, and on each subsequent January to the present year, the defendant as such trustee has exhibited an account to the probate court, of receipts, payments and expenses as trustee, and an inventory of the trust fund, making oath that the accounts were correct; the probate court indorsed thereon "exhibited, sworn to and accepted," with

the date, and recorded the same, together with such indorsement; with this exception, that the part of the account giving items was not recorded, but filed merely. Mrs. Cowen was not present at such exhibition of accounts; she had neither notice nor knowledge thereof, and she took no appeal from the decree of the court accepting them.

Upon the death of Mrs. Cowen intestate, her estate was represented as insolvent, and commissioners were appointed to receive and determine upon claims presented against it. Subsequently to the bringing of this suit the plaintiff presented his judgment to them as a claim, omitting to state that he had any security therefor, as required by Gen. Statutes, § 590, and the commissioners allowed the same in full as a claim wholly unsecured.

Upon the foregoing facts the plaintiff claimed—(1st.) That by the will of Frederick Tyler, Mrs. Cowen was entitled to rent and income accruing after the date of the testator's death (instead of after November 1st, 1881) from the estate given by the fourth clause of the will in trust for her benefit.—(2d.) That, if she were not entitled to such rent and income from the date of the death of said Tyler, she was entitled to rent and income so accruing after the expiration of one year, that is, rent and income accruing after August 3d, 1881.—(3d.) That she was entitled to the interest, amounting to $431.34, accruing from June 15th, 1881, and August 20th, 1881, to November 1st, 1881, on the $15,000 and $10,000, paid to the trustee by the executors, which interest was paid by the trustee to the executors, instead of to Mrs. Cowen.—(4th.) That the defendant had never in fact been released or discharged by Mrs. Cowen from its liability to her for any of said rent or income accruing prior to November 1st, 1881, and that the matters alleged in the answer and found true by the court did not amount to a discharge of such liability by operation of law.—(5th.) That, on May 29th, 1884, when the defendant was garnished, it had in its hands, of such rent and income as had accrued between Mr. Tyler's death and November 1st, 1881, a large sum, to wit, about the sum of $2,000 (namely, two fifths of

$5,110.21), and that the defendant was liable to Mrs. Cowen and indebted to her on said May 29th, for two thirds thereof, the other one third being due to her daughter, Sophia T.—(6th.) That the defendant was then liable to Mrs. Cowen for such amount of rent and income, as having moneys belonging to her in its hands which it had received from the executors of Mr. Tyler.—(7th.) That it was then liable to her for such amount, as having in its hands that amount of accrued rents and income belonging to her, which it was its duty as trustee to pay over.—(8th.) That it was then liable to her to that amount in damages for its failure to duly execute the trust in her favor, and its neglect to collect and pay over to her the rent and income accruing prior to November 1st, 1881, to which she was entitled.—(9th.) That the defendant was liable to Mrs. Cowen and indebted to her at the time of the garnishment on May 29th, 1884, for her portion of rent and income accruing after the expiration of one year from her father's death and prior to November 1st, 1881, that is, from August, 1881, to November 1st, 1881.—(10th.) That on May 29th, 1884, the defendant was indebted to Mrs. Cowen for the interest, $431.34, accruing on said sums of $15,000 and $10,000, from June 15th, 1881, and August 20th, 1881, to November 1st, 1881.—(11th.) That the plaintiff, by the suit and garnishment of the defendant on March 15th, 1887, had not in any way released or discharged the defendant from its liability upon the original garnishment of May 29th, 1884.

But the court overruled all the claims of the plaintiff, and upon the foregoing facts decided that, under the provisions of section fourth of the will, Mrs Cowen was not entitled to any rent or income accruing before November 1st, 1881, and also found upon the foregoing facts, that at the time of the garnishment, on May 29th, 1884, the defendant was not indebted to Mrs. Cowen, and had no estate of hers in its hands, and rendered judgment for the defendant. The plaintiff has brought the case before this court by appeal.

The claims of the defendant are—(1st.) That under the will no part of the interest, rents or dividends earned by

the estate between the date of the testator's death and the date of distribution became the absolute property of Mrs. Cowen as the life tenant of an aliquot part of the residue of the estate.—(2d.) That the bringing of the second suit on March 15th, 1887, and service of process of garnishment therewith upon the defendant, was the intentional relinquishment of the attachment lien obtained by service of process on May 29th, 1884.—(3d.) That there was a distribution by order of the probate court, and a payment to the defendant as trustee, of a sum as principal; that this order was conclusive upon the trustee, Mrs. Cowen, and the remaindermen; that neither the trustee nor Mrs. Cowen appealed therefrom; and that the remaindermen, who are interested in the fund, are not parties to this proceeding. —(4th.) That the decrees of the probate court in allowing the annual accounts of the trustee are conclusive upon all parties, there having been no appeal.—(5th.) That the plaintiff by presenting his judgment to the commissioners upon the estate of Mrs. Cowen as being wholly unsecured, waived his lien by garnishment, and is now estopped from claiming anything by virtue thereof.

Whatever may be the rule as to the time when a legacy of a sum of money becomes payable and begins to draw interest if payment is deferred, in the absence of any express declaration upon that point in the will, it is well established that where there is the bequest of the whole or of an aliquot part of the residue of an estate to a legatee for life, remainder over, and no time is fixed by the will for the commencement of such life use, the legatee is entitled to the use or income of the clear residue so bequeathed, as the same may be at last ascertained, to be computed from the death of the testator; is entitled to the income which may accrue during every moment of life subsequent to the moment when the will becomes an operative instrument, unless it places some limitation upon such enjoyment. In the will before us there is no such limitation, either express or by necessary legal implication. 1 Jarman on Wills, (4th Am. ed.,) side page 547, note; *Williamson* v. *Williamson*, 6 Paige, 298; *Cooke* v.

*Meeker*, 36 N. York, 15; *Bartlett* v. *Slater*, 53 Conn., 106; *Lovering* v. *Minot*, 9 Cush., 151; *Pollock* v. *Learned*, 102 Mass., 54; *Angerstein* v. *Martin*, Turn. & Russ., 234.

Between the date of the death of the testator and that of distribution, the estate in the hands of the executors earned nearly $4,600. They were the lawful recipients of this income, but it formed no part of the estate to be distributed; no part of the residue of capital which the will required them to pay to the trustee for Mrs. Cowen. It was their duty to pay two fifths thereof to her as of her absolute property. But they mingled it with the capital and subjected the whole to the action of distributors. These last distributed the whole as the property of the estate; the probate court set its seal of approval to the distribution by its decree affirming it. All legatees, life tenants and remaindermen alike, including Mrs. Cowen, were parties to this decree determining that this income should be distributed as principal. Mrs. Cowen was of legal capacity; she knew that the estate was in settlement in the probate court and that that court would by its decree determine her right in this regard; she had her day in court and the right of appeal; this last right none the less because her share of the residue would be in the keeping of the defendant as trustee. Inasmuch therefore as the defendant had neither possession nor right of possession of this portion of the rents, interest and dividends belonging to Mrs. Cowen, nor owed any legal duty to her either to obtain such possession or to appeal on her behalf from the decree of approval by the probate court of the distribution thereof, it had not in respect thereof at the time of service of the plaintiff's process of garnishment, any money, goods or effects belonging to her in its hands, and owed her no debt.

The legal duty owed by it to her could be discharged by the safe keeping of the amount which it received under the decree of the probate court as residuary principal of the estate. There is therefore a final decree of a court having jurisdiction of the property and of all persons interested in it, neither reversed nor appealed from, determining that a portion of the property which the plaintiff seeks by his writ of

*scire facias* to sequester to his use, as the absolute property of Mrs. Cowen, is not such. The rights of remaindermen under that decree are beyond his reach.

On the 15th day of June, 1881, the executors paid, as a portion of the residue, $15,000, and on August 20th following $10,000, to the defendant as such trustee, as principal of the fund for the life use of Mrs. Cowen. These sums so received and retained by it earned in its hands the sum of of $431.34 prior to the 1st day of November following. This interest thus received was the absolute property of Mrs. Cowen. Upon reception thereof the defendant became her debtor to that amount, and could relieve itself from its obligation to her therefor only by payment to or for her. The payment thereof by it to the executors was neither to nor for her; therefore, so far as she was concerned, it was of no legal significance. As to her it was a wrongful payment. The defendant continued thereafter to be her debtor as before, and that debt is subject to attachment by the plaintiff. This result is not affected by the fact that this income was subsequently mingled by the executors with the principal of the estate, and was distributed as such under the order of the probate court, and that such distribution was confirmed by a decree of the court to which Mrs. Cowen was a party and from which she took no appeal. That decree concludes her as between herself and the remaindermen, but not as between herself and the defendant as her trustee, in respect to its obligations to her. The sole purpose of it was to determine that the distributors had rightly divided the residue ; not at all to adjust an account between trustee and *cestui que trust.* Nor is it affected by the fact that the probate court subsequently approved a statement of that account in which such payment was entered. This was no notice to her that such payment had been made; none that approval thereof would be asked. She had no knowledge either of payment or of approval. No statute required, indeed no statute could require her to take notice of either at her peril. The order passed under such circumstances does not conclude her.

While the estate was before the probate court for settlement that court had jurisdiction of it for all purposes until the settlement was completed; but when a portion of the residue was distributed to the defendant as trustee, the trust fund became a distinct matter, over which the probate court had no jurisdiction until it was brought before it, and it could not be brought before it in such a way as to give it complete jurisdiction so that it could pass a decree binding upon all parties interested, except by notice served upon those parties. The filing of an inventory by the trustee and the rendering of an annual account, under Gen. Statutes, § 498, does not give the court such jurisdiction where such notice has not been given.

Upon the death of Mrs. Cowen intestate, her estate was represented to be insolvent, and commissioners were appointed to receive and decide upon the claims of creditors, and to report to the probate court a list thereof, specifying such as were allowed, also such as were disallowed by them, and to inquire into the cash value of any security upon the property of the estate which any creditor might have. The plaintiff presented his judgment as a claim to the commissioners, making no mention of any security by attachment, and his judgment was allowed in full, as an unsecured claim.

It is the claim of the defendant that thereby the plaintiff waived his lien and estopped himself from now claiming anything under it.

The commissioners reported to the probate court their allowance of the entire amount of the plaintiff's judgment as a claim in his favor against the estate of Mrs. Cowen, and were silent as to any security therefor. That report not having been appealed from, the defendant, whether speaking for itself or Mrs. Cowen's estate, cannot now inquire as to the amount thereby ordered to be paid to the plaintiff. The matter was one wholly for the commissioners to determine, or the Superior Court on appeal from their action, and the plaintiff's right to any security that he held and is now claiming, is not affected by his action at that time or by that

of the commissioners. The estate has had its day in court, and it cannot now intervene between the parties to the present suit. Much less can the defendant, holding money of the estate, make the matter a defense to this *scire facias.*

The defendant thinks that a great wrong will be done if the plaintiff should by the joint effect of the allowance by the commissioners and of his lien receive a larger per centage upon his claim than he would regularly have done. The wrong would be greater if an insolvent debtor should be allowed to withhold a portion of his estate from all creditors; and still greater if this defendant, not a creditor, should be allowed to keep a portion for its own use.

The plaintiff by his first writ, served on the 29th day of May, 1884, attached whatever of the property of Mrs. Cowen was then in the hands of the defendant. By his second writ, served on the 15th day of March, 1887, and which was an action on the judgment obtained in the first suit, he again garnished the defendant, attaching thereby whatever of such property had come into its hands between these respective dates. The defendant insists that the second suit is the intentional abandonment of the first.

This question of intent is one of fact, and there is no finding of abandonment. Besides this, it is found that the second suit was brought as a step under the statute toward carrying Mrs. Cowen into insolvency. With this object in view, there is no room for the inference that he intended in bringing it to abandon the lien that he had acquired by the first attachment. As the second suit never went into judgment it is not necessary to consider what would have been the effect on the *scire facias* if the first judgment had been merged in a second one.

. The probate court made an allowance to Mrs. Cowen from the estate of her father, of the sum of $1,500 for her subsistence as his family during the period of settlement. This was a discretionary act, having no reference to or effect upon any provision of the will, nor upon the right of any heir or legatee. It was a matter wholly for the probate court to determine, and its action cannot be reviewed by

this court except upon appeal.   Mrs. Cowen's right to the income of the share of residue set apart for her use cannot be affected by her having received this allowance for her support, although her right to that income may have made the allowance unnecessary.

There is error in the judgment of the Superior Court so far forth as the item of $431.34 is concerned, being interest accruing upon the sum of $15,000 between June 15th and November 1st, 1881, and upon the sum of $10,000 between August 20th and November 1st, 1881, in the hands of the defendant as trustee, for which it was indebted to Mrs. Cowen at the time of service of process of garnishment.

In this opinion the other judges concurred.